IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

S))))))))))))))))Q
No. 91-6060
S))))))))))))))))Q

JAMES MICHAEL BRIDDLE,

Petitioner-Appellant,

versus

WAYNE SCOTT, Director,
Texas Department of Criminal
Justice Institutional Division,

Respondent-Appellee.

S))))))))))))))))))))))))))Q
Appeal from the United States District Court for the
Southern District of Texas
S))))))))))))))))))))))))))Q
(August 23, 1995)

Before GARWOOD, DAVIS and WIENER, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant James Michael Briddle (Briddle), a Texas death row inmate, appeals the district court's denial of his habeas corpus petition under 28 U.S.C. § 2254. We affirm.

**Facts and Procedural Background**

Briddle was indicted by a Texas grand jury on March 1980, and reindicted in October 1980, on two counts of capital murder committed in Harris County, Texas, February 23, 1980, namely the capital murder of Robert Skeens while committing robbery and the capital murder of Robert Banks while committing robbery. The state

elected to proceed only on the count concerning Banks. Pre-trial motions were heard on January 19 and 20, 1982, *voir dire* lasted from January 21, 1982, through February 10, 1982, and the trial proper commenced February 17, 1982. The jury returned a verdict of guilty of the capital murder of Banks on February 24, 1982. On February 25, 1982, after the separate punishment hearing, the jury answered affirmatively the two special issues submitted pursuant to Tex. Code Crim. P. Ann. art. 37.071 as then in effect,[1] and thereafter the state district court accordingly sentenced Briddle to death. Judge Perry Pickett presided at all trial proceedings.

In the state trial court, Briddle was represented by attorney Mark Vela until approximately October 6, 1981, when his representation was taken over by attorneys Al Thomas and Jim Sims.[2] On his direct appeal to the Texas Court of Criminal Appeals, Briddle was represented by attorney Allen Isbell.

On September 23, 1987, the Court of Criminal Appeals affirmed

---

[1] These issues were:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;" *Id*.

[2] Thomas has been licensed to practice since May 1965, served as a prosecutor in the Harris County District Attorney's office until 1969, and since then had practiced as a criminal defense attorney. Prior to Briddle's trial, he had defended four capital murder cases. Sims was licensed to practice in May 1969. He was an Assistant District Attorney in Harris County until 1975, when he went into private practice, primarily in criminal law. He had defended two capital murder cases, one with Thomas, before Briddle's trial.

2

Briddle's conviction and sentence without dissent. *Briddle v. State*, 742 S.W.2d 379 (Tex. Crim. App. 1987). The opinion of the Court of Criminal Appeals accurately describes the circumstances of the offense as reflected by the record evidence as follows:

> "The State's chief witness was Linda Joyce Fletcher, appellant's former wife. The record reflects the couple married in California. On February 14, 1980, the couple began hitchhiking to Florida with a few clothes and $30.00. They were joined in Arizona by Pamela Perillo. On February 22, 1980, after reaching Houston the three were hitchhiking near the Astrodome when they were picked up by the alleged deceased, Robert Banks. Banks was in the process of moving to another house and the three hitchhikers assisted him in moving some of his belongings. Banks treated them to dinner. When Banks paid for the meal, Fletcher and Perillo observed he had several hundred dollars in his wallet, and Perillo told appellant about the money.
>
> Appellant, his wife (Fletcher) and Perillo spent the night at Banks' house and then helped him move other belongings the next day. In the process the appellant discovered Banks had some guns. When Banks took a shower appellant telephone a friend in California and invited him to come to Texas as he (appellant) 'had a pigeon out here with lots of money and guns.' Appellant proposed a robbery, but the California friend declined.
>
> Banks then took his three guests to a carnival and rodeo at the Astrodome. There Perillo told appellant she wanted to kill Banks and appellant answered 'Okay.' He then went off to do some 'planning,' telling Perillo to relax when she agitated to 'do it tonight.' After the rodeo Banks and his guests went to dinner and returned to Banks' house where they met Bob Skeens, Banks' friend from Louisiana, who had arrived there in his green Volkswagen.
>
> On Sunday, February 24, Banks and Skeens left the house to get coffee and doughnuts for everyone. While they were gone appellant armed himself with a shotgun and Perillo got a handgun. While awaiting the return of the two men appellant jumped up and down with excitement. When Banks and Skeens returned Perillo hid in the bedroom and appellant got inside a closet. He began to make a tapping sound. When Banks reached to open the closet door the appellant jumped out announcing 'This is a robbery.'

3

Skeens got down on the floor and pleaded for mercy. Banks came toward the appellant, who struck him in the face with the butt end of the shotgun. Perillo came out of her hiding place and told Banks to get on the floor, 'that it wasn't any joke.' Perillo obtained a machete and cut up some rope and then she and appellant tied Banks and Skeens with rope. After they were bound appellant and Perillo took the wallets from the two. Appellant took $800.00 from Banks' wallet and waved it around saying 'he had it.' Appellant ransacked the bedroom, taking clothes and a backpack. Perillo found a cassette recorder and camera. Appellant took Skeens into the bedroom and told Skeens that he (appellant) had killed five people and two more didn't matter. Fletcher, appellant's wife, did not see what happened to Skeens, but she did see appellant loop a rope around Banks' neck. Fletcher was then ordered to wait in Skeens' green Volkswagen. About 20 minutes later Perillo came to the car with the shotgun wrapped in a blanket. She also brought out a machete, handgun and other items. Appellant brought out the backpack and a rifle. They drove in the Volkswagen to Dallas, where they abandoned it and took a bus to Colorado.

When Banks failed to appear for work for two days, his supervisor want to Banks' house to investigate. A man with the supervisor looked in a window and saw a body. The police who arrived at the scene found the bodies of Banks and Skeens, each bounded [sic] and with a rope around the neck. Dr. Joseph Jachimczyk, the Chief Medical Examiner, testified that each died from asphyxia due to strangulation with a rope.

On March 3, 1980, Perillo gave a statement to Denver, Colorado police and a description of appellant. With her consent they entered a room at a hotel in Denver and found appellant, his wife and two boys. The backpack was found in the room.

A Houston detective went to Denver and interviewed appellant and obtained an oral confession in which he told of his participation in the alleged offense. He admitted putting a rope around Banks' neck and pulling on it with Perillo until Banks was unconscious. He admitted he took the wallets, several hundred dollars, the machete and shotgun. He maintained his wife (Fletcher) was outside the house during the entire incident." *Id*. at 381-82.

On October 28, 1987, the Court of Criminal Appeals granted

Briddle's motion, filed by attorney Isbell, to stay issuance of the

4

mandate for sixty days to allow for the filing on Briddle's behalf of a petition for writ of certiorari in the United States Supreme Court. No such petition having been filed, the Court of Criminal Appeals issued its mandate January 15, 1988. On February 1, 1988, Briddle, whose representation had by then been taken over by attorney Alton Stephens, moved the Court of Criminal Appeals to recall its mandate, so that a petition for certiorari on Briddle's behalf could be filed in the Supreme Court, asserting an inability to locate five volumes of the record. The Court of Criminal Appeals denied the motion, and thereafter, on February 4, 1988, the Texas trial court scheduled Briddle's execution for March 21, 1988. On March 11, 1988, Stephens, on behalf of Briddle, moved the Court of Criminal Appeals for a stay of execution pending filing of a petition for certiorari, representing that he had received the missing portions of the record on February 26, 1988. On March 15, 1988, the Court of Criminal Appeals granted the motion and stayed Briddle's execution for sixty days.

Nothing further having been filed in any court by or on behalf of Briddle, the state trial court, Judge C.V. Milburn, on October 26, 1988, set Briddle's execution for December 1, 1988. The next day, October 27, 1988, Stephens, on Briddle's behalf, filed a petition for certiorari with the Supreme Court, and moved the Supreme Court for stay of execution. On November 22, 1988, Justice White entered an order that Briddle's execution was "stayed pending the disposition by this Court of the petition for a writ of certiorari. Should the petition for a writ of certiorari be denied, this stay terminates automatically." On December 8, 1988,

5

the Supreme Court denied the petition for certiorari. *Briddle v. Texas*, 109 S.Ct. 543 (1988).

On December 15, 1988, the state trial court, Judge Michael McSpadden, entered an order resetting Briddle's execution date for February 14, 1989, and ordering "that Mr. Alton L. Stephens, counsel for James Michael Briddle, file any Application for Writ of Habeas Corpus concerning the instant conviction on or before January 17, 1989, raising any and all arguable claims known to counsel." However, nothing was filed by or on behalf of Briddle until February 2, 1989, when Stephens, and co-counsel Foy, joined by attorney Eden Harrington, filed, both in the state trial court and in the Texas Court of Criminal Appeals, Briddle's petition for habeas corpus, request for evidentiary hearing, and application for stay of execution. On February 13, 1989, Judge McSpadden reset Briddle's execution date for April 21, 1989, and, in a separate order, directed that the state file its answer by not later than March 8 and that by not later than March 5 Briddle's trial attorneys Thomas and Sims file affidavits, with copies thereof to counsel for Briddle and counsel for the state, "summarizing their actions taken to represent Applicant, including trial preparation . . . and responding to the allegations of ineffective assistance of counsel contained in the application for writ of habeas corpus." On March 8, 1989, the state filed its original answer; on March 17, 1989, the affidavits of attorneys Thomas and Sims were filed; and, on March 27, 1989, the state filed its amended answer.

Subsequently, on March 27, 1989, State District Judge Ted Poe issued an order stating that after reviewing the file, including

6

the habeas petition and request for evidentiary hearing, the affidavits of Thomas and Sims and the state's amended answer, " there are no controverted, previously unresolved facts material to the legality of Applicant's confinement which require an evidentiary hearing" and directing each of the parties to submit by not later than April 5, 1989, "any findings of fact and conclusions of law which they wish to propose to this court for its consideration."

The state and Stephens on behalf of Briddle each submitted their respective proposed findings of fact and conclusions of law on April 5, 1989, and on April 11, 1989, Judge McSpadden adopted the state's proposed findings of fact and conclusions of law and recommended that the Court of Criminal Appeals deny relief. On April 14, 1989, the Court of Criminal Appeals issued its order denying relief "on the basis of the trial court's findings of fact and conclusions of law."[3]

Meanwhile, on February 10, 1989, Briddle, through attorneys

---

[3]    The order states:

> "In the instant cause, applicant presents nine allegations in which he seeks to challenge the validity of his conviction. The trial court has entered findings of fact and conclusions of law and recommended the relief sought be denied. This Court has reviewed the record with respect to the allegations now made by applicant and finds that the findings of fact and conclusions of law entered by the trial court are supported by the record.
>
> The relief sought is denied on the basis of the trial court's findings of fact and conclusions of law."

The order contains at its foot the notation:  "Clinton, J., would stay further proceedings pending disposition of Penry v. Lynaugh, No. 87-6177, cert. granted _____ U.S. _____ (1988)."

7

Stephens, Foy, and Harrington, filed the instant petition under section 2254 in the district court below, together with a motion for stay of execution and motion for evidentiary hearing. After the state trial court, on February 13, 1989, reset Briddle's execution date for April 21, 1989, Briddle, through Stephens, on March 3, 1989, moved the district court below to "hold the matter in abeyance pending subsequent reapplication," should that be necessary. On April 17, the state filed its answer to the federal habeas petition, relying, among other things, on the state habeas court findings and conclusions, and also asserting procedural bar. On April 18, 1989, Briddle moved the district court below for stay of the execution set for April 21, 1989, and to reinstate and supplement the previously filed section 2254 petition. The same day the district court below stayed Briddle's execution. Also on April 18, 1989, the district court below entered an order that included the following provisions:

> "1. Counsel for Petitioner shall review the state court records and interview the Petitioner within twenty-one (21) days of the date of this Order.
>
> At this conference, counsel will: (a) advise the Petitioner that, if there are grounds existing at the time of the conference for the granting of a writ, all such grounds must be forthwith stated in appropriate pleadings and any failure to do so *will constitute a waiver of omitted grounds*; (b) review with Petitioner the Rules Governing Section 2254 Cases in the United States District Courts; and (c) explore as fully as possible all potential grounds for relief. [emphasis added]
>
> 3. Within thirty (30) days of the date of this Order, counsel for Petitioner shall file an Amended Petition for Writ of Habeas Corpus, which shall include the following:
>
> a. All claims, contentions, and arguments asserted in previous state or federal petitions, stating whether

8

or not those claims were exhausted or decided. If counsel determines that there exists any unexhausted claim for which a state remedy is still available, counsel shall immediately notify the Court and counsel for Respondent of the claim and the available remedy.

      b. All current claims of a constitutional violation or deprivation upon which Petitioner bases his application for writ of habeas corpus, and

      c. Statement as to whether Petitioner is entitled to an evidentiary hearing on any issue concerning the ineffective assistance of counsel.

      Each claim shall be set forth in a separately numbered section of the amended petition.

      <u>All claims not asserted in the Amendment Petition for Writ of Habeas Corpus shall be deemed and are forever waived, unless predicated upon new evidence or changes in the law</u> [emphasis in original]."

On May 18, 1989, counsel Stephens and Harrington reported that, pursuant to the Court's April 18 order they had personally met with Briddle, who had reviewed the April 18 order, and advised him concerning it and discussed with Briddle "all potential grounds for relief and fully advised him of the present states of proceedings." Then, on May 19, 1989, Briddle, through attorneys Stephens, Foy, and Harrington, filed his amended habeas petition with the district court below and his request for evidentiary hearing "to cross examine" attorneys Sims and Thomas "on their affidavits" and to inquire into "Linda Briddle's [Linda Fletcher's] annulment" in April 1981 of her marriage to Briddle. The amended petition alleged that all claims made in it had been presented and exhausted in the state courts. It further sought a stay pending the Supreme Court's decision in *Penry v. Lynaugh*, *cert. granted*, 108 S.Ct. 2896 (1988).

The state, on June 21, 1989, filed its amended answer, motion

for summary judgment, and brief. It relied, among other things, on the Court of Criminal Appeals' opinion on direct appeal, the findings and conclusions of the state trial court and Court of Criminal Appeals in the state habeas proceeding (including the procedural bars found therein), the affidavits of attorneys Thomas and Sims, and the state record.

No response to this motion for summary judgment was ever filed.

The district court below, on July 20, 1989, entered an "interim order" denying the requested evidentiary hearing. As to attorneys Thomas and Sims, the court noted that the state "process is adequate and no allegation is made that the process failed." As to Linda Fletcher's annulment, the court found that the annulment documents were "regular on their face, and admitted so" and that "[a]dequate opportunity to set aside the alleged void judgment of annulment between the petitioner and Fletcher has existed."[4]

Thereafter, Stephens, on August 18, 1989, again moved for a stay until the Texas Court of Criminal Appeals, in another case then pending before it, determined whether as a matter of law a *Penry* claim would be waived by failure to assert it at trial, where trial took place before *Penry* was handed down. The state filed an opposition thereto.

Nothing thereafter happened in the case until August 3, 1990, when the district court issued its memorandum opinion denying all

_____

[4]     It also determined that the request for stay pending *Penry* was moot. *Penry* was handed down June 26, 1989. *Penry v. Lynaugh*, 109 S.Ct. 2934 (1989).

10

relief. It held that state trial court habeas findings adopted by the Court of Criminal Appeals were "entitled to the statutory presumption of correctness [28 U.S.C. § 2254(d)]." It discussed and rejected each of Briddle's asserted bases for relief. It also noted that "the evidence of the petitioner's guilt is overwhelming." The court concluded that Briddle's claims about failure to develop mitigating evidence were appropriately rejected based on the state habeas court's fact findings adopted by the Court of Criminal Appeals. The court further noted "[n]othing that has been proffered by the petitioner since the trial indicates that the petitioner was or is mentally ill or was unable to conform his conduct or how, if at all, any drug use the day before the murder was committed prevented the petitioner from conforming his conduct." It concluded that Briddle's *Penry* type claims and his similar challenges to the Texas statutory sentencing scheme were procedurally barred and were in any event without merit, and that nothing in the Texas statutes prevented Briddle from offering the mitigating evidence he claimed should have been offered.

On August 15, 1990, Briddle, through *Stephens*, filed a timely motion to reconsider. This motion was entirely directed to the district court's ruling that the *Penry* claim was procedurally barred, and sought in the alternative a stay until disposition of the then pending case of *Selvage v. Collins*, 897 F.2d 745 (5th Cir. 1990), in which this Court had, on March 6, 1990, certified to the Texas Court of Criminal Appeals the question whether, in a case tried prior to *Penry*, the failure at the punishment stage of trial to request special instructions or to object to the form of the

11

special issues respecting *Penry*-type evidence constituted a procedural bar under Texas law. The Texas Court of Criminal Appeals had not then answered that question, although it ultimately did so on May 29, 1991, finding no procedural default. *Selvage v. Collins*, 816 S.W.2d 390 (Tex. Crim. App. 1991).

Thereafter, nothing further transpired until on August 8, 1991,[5] attorney Jane Disko filed a motion, also signed personally by Briddle, to be substituted for Stephens as Briddle's counsel. On September 20, 1991, attorney Disko, joined by attorney Schaffer of the same firm, filed a motion entitled "Supplement to Petitioner's Motion to Alter and Amend Judgment," together with a memorandum in support thereof. The motion recited:

> "Present counsel's review of the record reveals additional issues that are not presently before the court. Intervening case law requires that petitioner file this supplement to protect his substantive and procedural rights. *McCleskey v. Zant*, 113 L.Ed.2d 5 (1991)."

The motion then summarized the reasons assertedly supporting the relief it requested into the following three:

> "1. Petitioner was denied due process because the state district judge who denied his request for an evidentiary hearing and selected another judge to decide the habeas corpus application was initially his prosecutor. This court should . . . dismiss the petition without prejudice and remand the proceedings to state court to present all issues to an unbiased judge.
>
> 2. There are federal issues not previously raised in state or federal court. In light of **McCleskey v. Zant, supra,** this court should . . . allow petitioner to properly raise all issues in his

---

[5] A single exception is that on October 19, 1990, attorney Stephens filed his "motion to set appointed counsel's compensation."

12

initial federal petition, or in the alternative, to dismiss the petition without prejudice and remand the proceedings to state court to present all issues to an unbiased judge.

3.  This court declined to consider petitioner's claim under **Penry v. Lynaugh, 492 U.S. 302 (1989),** ruling that it was procedurally barred.  In **Selvage v. Collins, No. 71,024 (Tex. Crim. App.-May 29, 1991),** the Court of Criminal Appeals held that a **Penry** claim such as petitioner's is not barred.  As a result, this court should alter and amend its judgment and consider the **Penry** claims on the merits."

The motion concluded with a prayer for relief:

"that this court . . . vacate the judgment, dismiss the petition without prejudice, and allow petitioner to return to state court to present all issues before an unbiased judge.  In the alternative, petitioner requests that the court alter and amend its judgment, . . . grant leave to amend the Petition For Writ Of Habeas Corpus, grant an evidentiary hearing regarding unresolved issues of fact, and grant his Petition For Writ Of Habeas Corpus."

The memorandum in support of the motion was in five parts (parts I through V).  Part I urges that in light of *McCleskey v. Zant*, 111 S.Ct. 1454 (1991), the court should "allow leave to amend the petition," asserting that *McCleskey* indicated "all possible issues must be raised in the initial petition," that "[i]n view of *McCleskey*, petitioner seeks to leave to redraft certain issues . . . and to add federal constitutional issues."  This part concludes by stating that the court should "alter and amend the judgment" and "allow petitioner to amend his petition."

Part II of the memorandum contains the five "proposed amendments."  The first of these is that the state habeas proceedings denied Briddle due process because Judge Poe, who signed the March 27, 1989, order denying an evidentiary hearing in

13

the state habeas case, had been a prosecutor in the original case until sometime in September 1981, and that his said order was thus void under state law. These allegations were based on a copy of the March 27, 1989, order and on copies of portions of the state record attached to the motion showing that Judge Poe, then as prosecutor, announced the state ready in March 1980 and January 1981, presented the case to the grand jury in October 1980, and agreed to a resetting in August 1981.[6] There is no allegation that any of these facts were unknown, or unavailable, to either Stephens (or Harrington) or Briddle either at the time of the state habeas proceedings or thereafter during Stephens' (or Harrington's) representation of Briddle. It was also alleged that Judge Poe "asked Judge Michael McSpadden to rule on the [habeas] application." There is no allegation of any factual basis for this assertion, nor for the similar assertion that Judge McSpadden was a "long time friend of Judge Poe" and "Judge Poe personally asked Judge McSpadden to rule on this case, and Judge McSpadden agreed as a favor," and no affidavit, or tendered evidence, or any part of the record, even tends to support any of these assertions. It is also asserted that because of the foregoing the adoption by the court below of the state court habeas findings "likewise denied petitioner due process." No aspect of this claim had ever previously been raised either in state court or previously in this federal habeas proceeding.

---

[6] These documents are the only documents or "evidence" offered or submitted in support of the motion; no affidavits or the like were submitted with or in support of it, and neither the motion nor the memorandum was verified.

14

The next two proposed amendments consist of a total of fourteen different assertions of ineffective assistance of counsel at, respectively, the guilt-innocence stage and at the punishment stage of the trial.[7] All of these are based on the face of the state trial record, and none is claimed to be supported by any matter not previously before both the federal district court and the state habeas court. At least several of these claims were never previously raised in either this federal habeas or in the state court at any stage.[8] No claim of ineffective assistance of

---

[7] These are: failures to object to two different parts of Fletcher's testimony; failure to object to three different parts of the prosecution's closing argument; failure to request a mistrial after objection was sustained to another portion of the prosecutor's argument; failure to properly object to Briddle's confession as a whole on the grounds that it was the product of an illegal arrest and to object under state law to the part of it stating it did not bother him (Briddle) to get the death penalty because he had not made much of his life; failure to adequately show that the 1981 annulment (which counsel challenged at trial) of Fletcher's marriage to Briddle was "invalid" under California law because some of the grounds were not legally sufficient and all had been waived by continued cohabitation; advising Briddle that he would waive his spousal privilege claim if he testified (based solely on a somewhat ambiguous passage in the state record at which Briddle explains to the judge, outside of the jury's presence, why he was not going to testify; there is no allegation of what Briddle's testimony would have been); arguing to the jury, after urging that the victims may have been strangled by Fletcher and Perillo, that Briddle "certainly may be guilty of ordinary murder but not this capital murder"; specific instances of improper punishment phase jury argument by defense counsel; and failure to object to three different parts of the prosecutor's punishment phase jury argument.

[8] Among the totally new claims were the following: that defense counsel should have objected to the confession as the product of an illegal arrest; defense counsel wrongly advised Briddle not to testify because of possible waiver of spousal privilege; defense counsel's handling of the annulment (the annulment had been challenged in the state habeas and previously in the federal habeas, but it had not been asserted as a grounds of ineffective assistance of counsel); the failure to object to the prosecutor's argument that the jury paid his salary; the failure to object to

15

counsel was made respecting any failure to develop, present, or argue mitigating evidence or any failure of counsel to object to the punishment charge or to request punishment phase instructions or definitions.

The fourth proposed amendment is a claim, not previously raised in the instant proceeding or in state court, that the prosecutor intentionally violated the trial court's order granting defense counsel's motion *in limine* as to evidence that Perillo had confessed so as to implicate Briddle, by asking Fletcher "is not it a fact that Pam Perillo never said that you had anything to do with any of these murders."[9]

The fifth, and last, proposed amendment is that the Texas statutory sentencing procedure, by precluding consideration of Briddle's diminished culpability "due to an abnormal childhood and an absence of the usual internal controls on aggressive or impulsive behavior," deprived Briddle of his Sixth Amendment right to the effective assistance of counsel in that under "the law at the time of petitioner's trial, a reasonably competent lawyer could not risk presenting evidence of this nature" and deprived Briddle of his Eighth Amendment right to have the jury consider any

---

the prosecutor's argument that Briddle showed no remorse on the ground that the argument was a comment on his failure to testify; the failure to move for a mistrial after objection was sustained to the prosecutor's asserted vouching for Fletcher's credibility; and defense counsel's punishment phase argument that the jury's verdict was "not any of my business" and that while trading the perpetrators' lives for the victims' lives might have been desirable, it was no longer possible.

[9] Fletcher replied, "Yes, that's true." Defense counsel's objection was sustained and the jury was instructed to disregard, but defense counsel's motion for mistrial was denied.

16

"mitigating circumstances that may be relevant." Nothing in the state trial record is claimed to constitute evidence (either offered, conditionally offered, or admitted) of Briddle's abnormal childhood or absence of usual internal controls, and nothing outside of the trial record is pointed to in this respect. However, this contention is somewhat similar to ineffective assistance of counsel and counsel "chilling" contentions raised in the state habeas and previously in the federal habeas which each relied on the same January 1989 affidavits of Briddle's mother, father, and brother[10] and the January 1989 affidavit of a

---

[10] These affidavits each contained the following statements (though their order was slightly different in each):

"7. Mike was a poor student and was learning disabled with dyslexia [this was not in the brother's affidavit].

8. From about the age of 12 years Mike was in and out of various California State Institutions where he was medicated with Thorazine and Prolyxin, which are heavy psychotropic drugs [this was not in the father's affidavit; the brother's did not have the word "about"].

10. When Mike was sixteen years old he was involved in a motorcycle/train accident, when his friend, a passenger on Mike's motorcycle lost both arms and a leg. Mike was extremely emotionally upset and disturbed because of the injury to his friend.

11. Mike was always taking in stray animals to care for them, and on one occasion found a great dane and brought it home on his motorcycle and cared for it.

12. I am in touch with Mike and we correspond regularly. I visit Mike whenever possible.

13. Although I did not reside in Texas during the time of Mike's capital murder trial in 1982, I was aware of his trial, but I was never contacted by his trial counsel.

14. Had I been contacted by Mike's trial counsel I

17

psychologist who (at the request of Stephens) examined him for the

first (and only) time on January 20, 1989.[11]

---

would have informed him of the facts stated herein and would have testified at trial."

The father's and brother's affidavits (but not the mother's) also included the statement that "Mike has a daughter Renee, age 13 years, has expressed his concern for her on many occasions." The mother's affidavit, but not the others, also stated she was in an automobile accident when pregnant with Briddle, and that Briddle's birth in April 1955 was four to six weeks overdue, required forceps, and he "received severe bruises of the head," and that:

"Because Mike's father was severely injured when Mike was twelve years old, it was necessary for me to work outside of the home. During this period Mike would clean the house without being asked and would cook many of the family meals."

The brother's affidavit (but not the others) also stated "[b]efore age twelve, Mike and I participated in organized sports at school and in the area of our home"; "[i]n 1968 Mike had a brick wall collapse on him causing severe injury to his face and head"; and "[w]hile growing up Mike was a friendly person who was known and liked by all our neighbors." The father's affidavit (but not the others) also stated "Mike worked with me on the docks and was a very good worker. I got Mike a job in a warehouse and his employer told me he was an excellent worker."

[11] This document basically concluded that Briddle was not psychotic, but suffered from some variety of personality disorder, and had been diagnosed as Borderline Personality Disorder, Antisocial Personality Disorder, and Schizotypal Personality Disorder, and "to appear delusional, but not psychotic." It observes that "[m]ost literature indicates that there can be some success with the Schizotypal Personality Disorder through therapy." It notes that Briddle "speaks with a relatively good vocabulary," "was oriented to time, place, and person," "was cooperative," showed "good attention and concentration," functioned "in at least an Average range intellectually," and had "reading level for comprehension to late eleventh grade." It states that "personality evaluation does not indicate any form of psychotic condition at this time, nor is there a pattern that suggests psychosis, even though symptoms may be controlled by medication." It states that Briddle reported having "had psychiatric evaluation numerous times" but "states that he has never been diagnosed as being psychotic."
It refers to "one screening test" on which "his performance is defective, suggesting that there may be some neurological impairment" and states that "there is the possibility of minimal brain injury."

18

Part III of the September 20, 1991, memorandum contends that the May 29, 1991, decision of the Texas Court of Criminal Appeals in *Selvage v. Collins* renders erroneous the district court's holding that Briddle's *Penry* claim was procedurally barred, and that the court should thus "consider the *Penry* claim on the merits."

The memorandum's part IV, relying on the cumulative error language in the panel opinion in *Derden v. McNeel*, 938 F.2d 605 (5th Cir. 1991),SQwhich was subsequently vacated when we took the case en banc and affirmed the district court's denial of habeas

History given by Briddle is recited, including the following:

"The first time he was in a juvenile facility was at age 15 for three years. At age 17, he had an assault case in the California youth system, having pushed another youth under a train, causing him to lose several limbs.

Mike reports a tonsillectomy, hepatitis from drug abuse, and a head injury, including concussion when he was kicked in the head by a sheriff in Los Angeles County Jail. . . .

Mike said that he started doing marijuana probably before his teens, 'but it didn't do nothin for me.' Around the age of 12, he started doing downers . . . . He said he had experimented with every drug available and really liked heroin, but usually used speed because heroin was too expensive. He also started drinking while he was young, stating that it probably was peer pressure, as he ran with an older group of boys. . . . He also noted that he had been given massive amounts of Thorazine and Prolixin on an alternating basis for several years while he was in juvenile facilities in California.

. . . .

Mike reports convictions for robbery and interstate transportation of a vehicle in California, after which he spent three years in San Quentin and was paroled. He was returned to San Quentin for check fraud as his second conviction as an adult."

19

relief, *Derden v. McNeel*, 978 F.2d 1453 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 2928 (1993),SQcontends in entirely conclusory fashion, and without identifying any one specific or particular claimed error, that "the combination of the errors is such that petitioner was denied due process and a fair trial."  This claim had not previously been made in the instant federal habeas proceeding.[12]

The part V of the memorandum is its conclusion and prayer, which states:

> "Petitioner requests that the court alter and amend its order, vacate the judgment, dismiss the petition without prejudice, and allow petitioner to return to state court to present all issues to an unbiased judge.  In the alternative, petitioner requests that the court alter and amend the judgment, allow leave to amend the petition, and grant an evidentiary hearing to fully and fairly resolve all fact issues in dispute."

In sum, the motion and memorandum requested vacation of the judgment and only two other items of relief:  (1) dismissal without prejudice, or (2) amendment of the petition to include the new claims and have a hearing thereon.

Nowhere in either the motion or memorandum of September 20, 1991, is there any explanation of why it was not sooner filed, or why any of the new claims therein were not raised in the amended federal habeas petition or in the state habeas petition, nor is

---

[12]    In the state habeas petition's initial "summary statement of the case," the tenth ground listed is that "[t]he cumulative effect of the ineffective assistance of trial counsel, prosecutorial misconduct, and improper evidentiary rulings by the trial court, served to deprive the petitioner of a fair trial . . . ."  This contention was not, however, separately argued or addressed in the body of the petition which separately addressed the several claims raised.

20

there any factual allegation tending to show that it could not reasonably have been sooner filed, or that any of the new claims therein could not have been included in the amended federal habeas petition and in the state habeas petition, or that any of the contentions raised therein were not known or reasonably available both to Briddle and his former counsel Stephens (and Harrington).

In a brief order dated September 26, 1991, the district court, without stating reasons, denied both the August 15, 1990, motion to reconsider and the September 20, 1991, supplemental motion.[13]

Briddle filed a timely notice of appeal.[14]

### Discussion

In this appeal Briddle, through counsel Disko, presents a total of four points of error. We discuss these seriatim.

Briddle's first point of error is that "[t]he district court erred in denying petitioner's supplemental motion to alter and amend judgment because the state district judge who denied petitioner's request for an evidentiary hearing and selected another judge to decide the habeas corpus application was initially his prosecutor." Briddle contends in this connection that until September 1981 Judge Poe had been Briddle's prosecutor,

---

[13] The September 26, 1991, order states: "Pending before the Court is the petitioner's motion and supplement to alter and amend judgment and the Court having considered same is of the opinion that the relief sought should be denied. The Court previously lifted the stay in this case and nothing remains for this Court's consideration. Through inadvertence the motion to alter and amend judgment was overlooked." On September 20, 1991, the court had granted the August 8, 1991, motion to substitute counsel.

[14] The district court subsequently granted a certificate of probable cause (without stating any reasons or identifying any issues).

21

therefore his March 27, 1989, order denying an evidentiary hearing on Briddle's state habeas was void under Texas law, as was his asserted order assigning the case (at an unspecified time) to Judge McSpadden, and hence the district court erroneously accorded the presumption of correctness under 28 U.S.C. § 2254(d) to the state court findings on Briddle's state habeas proceedings.[15] We reject this contention.

Even laying aside its unexcused belatedness,[16] Briddle's contention is wholly without merit. The April 11, 1989, findings were made by Judge McSpadden, not by Judge Poe. The only action taken by Judge Poe in the habeas case was his order of March 27, 1989. Prior to that time, Judge McSpadden had already taken the following actions in the case: on December 15, 1988, he reset Briddle's execution for February 14, 1989, and ordered that Briddle file any habeas by January 17, 1989; on February 13, 1989, Judge

---

[15] We observe that this is the only challenge made to the findings made in the state court habeas proceedings.

[16] It has not been alleged that either attorney Stephens (or Harrington) or Briddle was unaware, prior to filing Briddle's state habeas, that Judge Poe had served as a prosecutor in the initial stages of Briddle's murder prosecution, or was unaware prior to April 5, 1989, that the March 27, 1989, order was issued by Judge Poe, or was unaware prior to April 5, 1989, of the alleged assignment by Judge Poe to Judge McSpadden. The only evidence claimed to indicate that Judge Poe acted as prosecutor consists of portions of the state record in Briddle's murder prosecution, and the March 27, 1989, order reflects that it was signed by Judge Poe, and on April 5 Briddle, through Stephens, responded thereto by submitting proposed findings and conclusions. Nothing in the state record even suggests an assignment of the habeas case by Judge Poe to Judge McSpadden, there are no allegations indicating any basis for the unverified assertion that such an assignment by Judge Poe occurred, and there is no affidavit or other evidence tending to indicate that it did. Nor is there anything to support the bare, unverified allegation that Judges Poe and McSpadden were long time friends.

22

McSpadden again ordered Briddle's execution reset for April 21, 1989; and in another February 13, 1989, order Judge McSpadden directed that Briddle's trial attorneys, Thomas and Sims, file by March 5 affidavits explaining their representation of Briddle and responding to his allegations of ineffective assistance of counsel, and that the state file its answer by March 8. There is absolutely nothing in the state record, or otherwise, indicating or tending to support the unverified allegation that Judge Poe assigned the habeas matter to Judge McSpadden. Moreover, that allegation (made by an attorney who did not come into the case until sometime in 1991) is wholly conclusory in that there is no indication or statement of any facts which have caused the pleader to believe that Judge Poe so assigned the matter. And, Judge McSpadden was clearly free to order a full scale evidentiary hearing, had he deemed such appropriate.[17] Moreover, under Texas law the only ultimate decision in a post-conviction habeas case is that made by the Texas Court of Criminal Appeals.[18] The Court of Criminal Appeals "is not bound by the findings, conclusions, or recommendations of the trial court in reaching decisions on post-

---

[17] See Tex. Code Crim. Proc. Ann. art. 11.07 § 2(d) ("the court may order affidavits, depositions, interrogatories, and hearings" to resolve "previously unresolved facts which are material to the legality of the applicant's confinement").

[18] Tex. Code Crim. Proc. Ann. art. 11.07, sec. 3; *Ex parte Alexander*, 685 S.W.2d 57, 60 (Tex. Crim. App. 1985) ("[i]t is well established that only the Court of Criminal Appeals possesses the authority to grant relief in a post-conviction habeas corpus proceeding where there is a final felony conviction").

23

conviction applications for writ of habeas corpus relief,"[19] and can itself order an evidentiary hearing.[20] Here, the Court of Criminal Appeals itself "reviewed the record," determined that the trial court's findings were supported thereby, and denied relief on the basis of such findings. The findings in substance became those of the Court of Criminal Appeals. There is simply nothing before us to support the contention that Judge Poe's having acted as prosecutor in the early pre-trial stages of Briddle's murder case in any way caused either the April 11, 1989, order of Judge McSpadden or the April 14, 1989, order of the Court of Criminal Appeals to be void under Texas law, or in any way affected either such order, or deprived Briddle of due process, or prevented application of the section 2254(d) presumption of correctness. We reject Briddle's first point of error.

The second point of error presented by Briddle in this appeal is that "the district court abused its discretion in denying petitioner's motion to amend his petition for writ of habeas corpus to comply with *McCleskey v. Zant*," 111 S.Ct. 1454 (1991). The argument under this point makes it clear that the contention is

---

[19]    *Ex parte Ramirez*, 577 S.W.2d 261, 263 (Tex. Crim. App. 1979). *See also Ex parte Adams*, 707 S.W.2d 646, 648 (Tex. Crim. App. 1986) (same); *Ex parte Acosta*, 672 S.W.2d 470, 472 n.2 (Tex. Crim. App. 1984) (same); *Ex parte Campos*, 613 S.W.2d 745, 746 (Tex. Crim. App. 1981) (same).

[20]    *See Ex parte Campos*, 613 S.W.2d 745, 746 (Tex. Crim. App. 1981) (ordering hearing); *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984) ("this Court ordered the trial court to hold an evidentiary hearing to allow the applicant to more fully develop his allegations"). *See also* Tex. Code. Crim. Proc. Ann. art. 11.07(c) sec. 3 ("The Court of Criminal Appeals . . . may direct that the cause be docketed and heard as though originally presented to said court or as an appeal").

24

that Briddle should have been allowed to raise the new claims asserted for the first time in his September 20, 1991, motion, and either have his petition dismissed without prejudice or amended and the new claims addressed on the merits, in order to avoid having to raise such new claims in a subsequent federal habeas that would be subject to dismissal for abuse of the writ pursuant to *McCleskey* (which Briddle's brief describes as having "held that a successive federal habeas corpus petition may be denied for abuse of the writ if the petitioner raises federal claims that could have been raised in the initial petition").  We reject this point of error.

As of September 20, 1991, Briddle had no absolute right to dismiss his petition without prejudice or to amend it. *See* Fed. R. Civ. P. 15, 41(a).[21]  He had been represented by the same counsel throughout his state and federal habeas proceedings (and that counsel had represented him on his application for *certiorari*, and had had the full record in his case since before October 1988), and has never alleged that such counsel was incompetent.  Briddle had already amended his federal habeas petition once, following an order of the district court expressly advising him that claims not included would be deemed forever waived; the state had already answered and moved for summary judgment; and more than a year previously the district court had rendered judgment on the merits dismissing the petition for writ.  Briddle presented absolutely

---

[21]     Under Rule 11 of the Rules Governing Section 2254 Proceedings, "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."  *See also, e.g., Randle v. Scott*, 43 F.3d 221, 226 (5th Cir. 1995).

nothing below or on this appeal to explainSQand he has not even attempted to explainSQthe thirteen-month delay in seeking amendment or dismissal without prejudice. All of the "new" issues were based on matters reflected by the face of the record and no change in the law was asserted, apart from *McCleskey* itself.[22]

We have ruled that "*McCleskey* is applied retroactively." *Hudson v. Whitley*, 979 F.2d 1058, 1063 (5th Cir. 1992). Thus, *McCleskey* affords no valid basis for Briddle's September 20, 1991, motion. And, we have likewise held that *McCleskey* may not be avoided by motions under Fed. R. Civ. P. 60(b). *Ward v. Whitley*, 21 F.3d 1355, 1360 & n.4 (5th Cir. 1994) ("A habeas petitioner may not add new constitutional claims to a petition after the district court has entered judgment").[23] Moreover, we observe that *McCleskey* did not change the law in this Circuit applicable to Briddle's situation. Long prior to Briddle's filing of either his state or federal habeas, we had held that a prisoner represented by counsel (as Briddle has consistently been) was bound to raise all available claims in his initial federal habeas, or face Rule 9(b) dismissal

---

[22] Briddle also relied on *Selvage v. Collins*, 816 S.W.2d 390 (Tex. Crim. App. 1991), as new law, but this merely provided an additional authority for his argument that his previously raised *Penry* claims were not procedurally barred (a contention previously made in both the state and federal habeas proceedings); *Selvage v. Collins* provides no excuse for raising any new claims. Moreover, as reflected in the text *infra*, *Selvage v. Collins* does avail Briddle as to his *Penry* claims.

[23] See also the authorities cited in *Williams v. Whitley*, 994 F.2d 226, 230-31 n.2 (5th Cir. 1993), as supporting our statement there that "we are inclined to agree with the state that Fulford's motion for reconsideration is best viewed as yet another habeas petition and thus subject to Rule 9(b)'s constraints." Rehearing en banc was subsequently granted, *id*. at 236, but thereafter Fulford's case was dismissed as moot due to his death.

in a subsequent habeas. *Moore v. Butler*, 819 F.2d 517, 519-20 (5th Cir. 1987); *Jones v. Estelle*, 722 F.2d 159, 167, 169 (5th Cir. 1983) (en banc), *cert. denied*, 104 S.Ct. 2356 (1984).[24] Indeed, the district court here had explicitly warned Briddle and his counsel that the to-be-filed amended petition would have to include all claims, and those not included would be waived.

We reject the contention that *McCleskey* required the district court to grant Briddle's September 20, 1991, motion.[25] Briddle's second point of error is without merit.

We turn now to Briddle's third point of error, which asserts that "[t]he district court abused its discretion in denying petitioner's motion to alter and amend the judgment because it failed to apply *Selvage v. Collins*," 816 S.W.2d 390 (Tex. Crim. App. 1991). Briddle's argument under this point is that the district court erred in applying the procedural bar to Briddle's *Penry*-type claim because Briddle's case was tried before *Penry*, and

---

[24] While *Jones* indicated there would be an exception for instances in which prior federal habeas counsel was incompetent (or where the prior habeas was *pro se*), Briddle (just as the petitioner in *Jones*) has never asserted that any of his habeas counsel was incompetent.
    Subsequent to *McCleskey*, we removed both the incompetent counsel and *pro se* petitioner exceptions to *Jones*. *See Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1652 (1993); *Sahir v. Collins*, 956 F.2d 115, 119 (5th Cir. 1992).

[25] We note that nothing in Briddle's September 20, 1991, motion and memorandum tends to establish, or is even claimed to establish, "cause" under *McCleskey* for failure to sooner raise the new claims sought to be thereby injected into the case (nor does Briddle contend otherwise on this appeal). Similarly, at no time has Briddle made any "colorable showing of factual innocence," *McCleskey* at 1471, or even claimed such (or that he was not "eligible" for the death penalty, *Sawyer v. Whitley*, 112 S.Ct. 2514, 2517 (1992)).

27

in *Selvage* the Court of Criminal Appeals held that in cases tried before *Penry*, where *Penry*-type mitigating evidence[26] was presented at trial, the failure to object to the punishment charge or to request special instructions or issues did not waive or bar a claim that the punishment phase special issues were not adequate to allow constitutionally- mandated consideration of the mitigating evidence. Briddle's claim in this respect presents no reversible error, and we reject it.

To begin with, while the district court did apply the procedural bar in this respect, it also, alternatively, considered and rejected the *Penry* claim on the merits. We agree that there was no valid *Penry* claim to begin with.

Of all the evidence introduced (or proffered) at any stage of the trial, only two items are claimed to constitute *Penry* evidence. The first is the evidence that Briddle and the others drank alcoholic beverages, smoked marihuana, and became intoxicated the *night before* the murders. There is no evidence of the quantity of alcohol or marihuana consumed, and *no* evidence that Briddle was intoxicated the next day when the murders were committed. In any event, "evidence of intoxication may be considered as favorable to a negative answer to both the first and second punishment special issues, and hence is not *Penry* evidence. *See Nethery v. Collins*, 993 F.2d 1154, 1161 (5th Cir. 1993); *James v. Collins*, 987 F.2d 1116, 1121 (5th Cir. 1993); *Cordova v. Collins*, 953 F.2d 167, 170

---

[26] By *Penry*-type evidence, we mean mitigating evidence that is of a kind that under *Penry* (and its progeny) requires modification of or addition to (or special instructions respecting) the former statutory punishment phase special issues in Texas capital cases.

(5th Cir. 1992), *cert. denied*, ___ U.S. ___, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992)." *Anderson v. Collins*, 18 F.3d 1208, 1214-15 n.5 (5th Cir. 1994). *See also Lackey v. Scott*, 28 F.3d 486, 487 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 743 (1995). The second and only other asserted item of *Penry* evidence is testimony by a woman whose son knew Briddle when both were confined in jail while Briddle was awaiting trial on the instant offense, that Briddle had befriended and counseled her son and effected "a complete change" for the better in the son's "attitude toward life," and, inferentially, indicating remorse on Briddle's part for having "failed in his life." We have repeatedly held that evidence of this sort is not *Penry* evidence. *Crank v. Collins*, 19 F.3d 172, 175 (5th Cir.), *cert. denied*, 114 S.Ct. 2699 (1994); *Graham v. Collins*, 950 F.2d 1009, 1032-33 (5th Cir. 1992) (en banc), *aff'd on other grounds*, 113 S.Ct. 892 (1993); *James v. Collins*, 987 F.2d 1116, 1122 (5th Cir.), *cert. denied*, 114 S.Ct. 30 (1993); *Barnard v. Collins*, 958 F.2d 634, 640 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 990 (1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1061-62 (5th Cir. 1992). *See also Johnson v. Texas*, 113 S.Ct. 2658, 2669-72 (1993); *Graham v. Collins*, 113 S.Ct. 892, 902 (1993).

There was no *Penry* evidence introduced or offered (conditionally or otherwise) at any stage of Briddle's trial. Accordingly, there is no basis for any *Penry* claim. "This Court has held that a petitioner cannot base a *Penry* claim on evidence that could have been, but was not, proffered at trial." *Anderson*, 18 F.2d at 1214-15 (citing cases). To the same effect are *Allridge v. Scott*, 41 F.2d 213, 223 (5th Cir.) (". . . capital defendants

29

cannot base a *Penry* claim on evidence that could have been, but was not, proffered at trial"), *cert. denied*, 115 S.Ct. 1959 (1995); *Crank*, 19 F.3d at 176; *Callins v. Collins*, 998 F.2d 269, 275 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 1127 (1994).  We have likewise consistently rejected the related argument that the Texas statutory capital sentencing scheme is invalid as preventing or chilling defense counsel's development of mitigating evidence.  Thus, in *Lackey* we stated:

> "Appellant argues that the Texas capital sentencing statute unconstitutionally interfered with his trial counsel's ability to make decisions about his defense. Specifically, Lackey argues that because mental health evidence could be considered in aggravation of the second special issue, the statutory scheme prevented his trial counsel from developing and presenting mitigating evidence about his mental condition.  We have considered and rejected this precise argument in previous cases. *See Black v. Collins*, 962 F.2d 394, 407 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992); *May v. Collins*, 948 F.2d 162, 166-68 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992)."  *Id*. 28 F.3d at 490.

*See also Crank*, 19 F.2d at 176.[27]

---

[27]  Moreover, the state habeas court found, on the basis of the affidavits of trial attorneys Thomas and Sims, that they were in no way "chilled" by the Texas statutory scheme.  These affidavits stand wholly unrebutted in this respect (and also in all other respects, with the single exception that Briddle's mother's affidavit states "I was never contacted by his trial counsel," while Thomas' affidavit states "contrary to Mrs. Briddle's affidavit, we did contact Mike's mother . . . she had little good to say about Mike, explaining that he had had continual problems with law enforcement since he was a youngster" and Sims' affidavit states "we contacted Mr. Briddle's mother against his wishes . . . the information provided by Mrs. Briddle was not at all helpful and generally damaging").  In this appeal, the only challenge to any of the state habeas court's factual findings is that concerning Judge Poe as above discussed and rejected in connection with Briddle's first point of error; this was likewise the only challenge to the state court findings made in the September 20, 1991, memorandum and motion; prior to that time there was no claim that the findings were not entitled to the presumption of correctness under section

30

Accordingly, there was no *Penry* error, and hence application of the procedural bar thereto was irrelevant. We thus reject Briddle's third point of error.

The fourth and final point of error presented by Briddle is that "the district court abused its discretion in summarily denying petitioner's motion and supplemental motion to alter and amend judgment."

So far as concerns the original motion to alter and amend, filed by attorney Stephens August 15, 1990, it was directed *solely* to the district court's ruling that Briddle's *Penry* claim was

---

2254(d).

We have many times held that a state habeas court's findings based on affidavits may be entitled to the section 2254(d) presumption of correctness. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990) (citing cases).

We note that Thomas' affidavit states that Briddle was "insistent" that none of his family be involved, and that they (Thomas and Sims) made a conscious decision not to call family members, knowing that as "the prosecutor . . . would find it difficult, if not impossible, to secure admissible evidence concerning Mike's California juvenile record and prior bad acts," there was "everything to lose by subjecting Mike's family members to the prosecutor's cross-examination," and that, as it was, they kept out a 1975 extraneous robbery offense. Sims' affidavit is essentially to the same effect. Thomas also stated "I always found Mike to be smart, lucid and cogent," and "we saw no need to have Mr. Briddle undergo a psychiatric examination. In fact, we were certain that a psychiatric examination might produce damaging evidence which could be used against Mr. Briddle at his trial." Sims' affidavit states "I did ask Mr. Briddle whether he had ever had psychological problems or suffered from any mental illness . . . he denied any such problems . . . His denial of mental problems was consistent with my observations . . . I found Mike to be reasonably intelligent, lucid and sophisticated with regard to institutional environments." There is no contrary evidence. The state habeas court credited these affidavits, and determined that there was no ineffective assistance of counsel. Neither the August 15, 1990, motion nor the September 20, 1991, motion and memorandum, nor this appeal, asserts any claim of ineffective assistance of counsel in respect to not developing or presenting mitigating evidence or not objecting to the punishment charge or special issues or not requesting further instructions in that respect.

31

procedurally barred (alternatively urging that the case should be stayed until *Selvage* resolved the procedural bar issue). As previously discussed in connection with Briddle's third point of error, as a matter of law there was no valid *Penry* claim, so the lack of procedural bar of such a claim was immaterial and afforded no valid basis on which to alter or amend the judgment.

So far as concerns the September 20, 1991, supplemental motion to alter or amend the judgment, Briddle's brief on appeal presents no argument as to the merits of any ground for relief raised in the September 20, 1991, motion.[28] Briddle merely argues in conclusory fashion that "[c]ounsel's evaluation of the record revealed that *certain issues were not raised in the district court*, nor did the court consider relevant intervening case law. On September 20, 1991, pursuant to *McCleskey v. Zant*, *supra*, petitioner filed a supplemental motion to alter and amend to protect his substantive and procedural rights" (emphasis added), and "[p]etitioner's motions, supported by memorandum of law, raised significant issues, addressed intervening and controlling case law, and sought alternative forms of relief. *The motions did not seek reconsideration of previously litigated issues*" (emphasis added).[29] Briddle urges, again in conclusory fashion, that the supplemental

---

[28]    To the extent that Briddle's brief may be regarded as impliedly incorporating into the argument under its fourth point of error the arguments it makes in support of its first, second, and third points of error, we have already rejected those arguments for the reasons previously stated in this opinion.

[29]    The only "intervening case law" cited was *Selvage* and *McCleskey*, neither of which, as discussed above in connection with Briddle's second and third points of error, justified any relief for Briddle.

32

motion should have been granted "in the interest of justice and judicial economy."

What Briddle is essentially arguing is that the district court abused its discretion by not vacating its judgment so as to allow Briddle to amend his complaint to assert new claims raised for the first time more than a year after the judgment. We reject this contention.

A district court's decision to grant or deny leave to amend after answer is reviewed only for abuse of discretion. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846-47 (5th Cir. 1992), *aff'd on this point en banc*, 37 F.3d 1069, 1073 & n.8 (5th Cir. 1994) (en banc) (no abuse of discretion in denying leave to amend to assert new theories after opposite party filed motion for summary judgment); 6 Wright, Miller & Kane, *Federal Practice and Procedure*: *Civil 2d* § 1486 at 604 ("Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed"). Similarly, denial of a motion for reconsideration is reviewed under an abuse of discretion standard. *See, e.g., Batterton v. Texas General Land Office*, 783 F.2d 1220, 1225 (5th Cir. 1986) ("A district court's decision to deny a motion to alter or amend judgment may be reviewed only for an abuse of discretion"); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). We have consistently recognized undue delay as justifying denial of leave to amend, *Little*, particularly where leave to amend is sought to raise new matters after the trial court has ruled on the merits or entered judgment. In such circumstances, we have consistently upheld the denial of

33

leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling. This is explained in 6 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1478, as follows:

> "Most courts faced with the problem have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60. . . . This approach appears sound. To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation. . . .
>
> The fact that a party desiring to amend after judgment has been entered is obliged first to obtain relief from the judgment imposes some important restrictions on the ability to employ Rule 15(a). For example, a judgment generally will be set aside only to accommodate some new matter that could not have been asserted during the trial . . . ." *Id*. at 692-694 (footnotes omitted).
>
> . . .
>
> "A number of courts, exercising their discretion under Rule 15(a), have refused to allow a postjudgment amendment when the moving party had an opportunity to assert the amendment during trial but waited until after judgment before requesting leave; these courts based their conclusions on the moving party's unreasonable delay. For example, in Freeman v. Continental Gin Company [381 F.2d 459 (5th Cir. 1967)], a seller sued a buyer for the purchase price under a contract of sale. The district court granted summary judgment for the seller . . . . Although the case was substantially disposed of, a formal judgment was not entered. Nine months after the grant of summary judgment and approximately eighteen months after the filing of the original answer, defendant attempted to amend to charge plaintiff with fraud. The district court denied leave to vacate the summary judgment and amend. The Fifth Circuit affirmed the lower court's decision, stating:
>
> > A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim. Liberality in amendment is

34

important to assure a party a fair opportunity to present his claims and defenses, but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.' * * * Much of the value of summary judgment procedure in the cases in which it is appropriateSQand we have held this to be such a caseSQwould be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Id.* at 696-97 (footnotes omitted).

We have consistently followed *Freeman*. Thus in *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982), we sustained a district court's denial of leave to amend (to assert a new defense) asserted in a motion for rehearing directed to an order granting the opposite party's motion for summary judgment, stating:

> "'A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.' *Freeman*, 381 F.2d at 469. Further, after summary judgment has been granted, the court has "even more reason for refusing to allow amendment." *Id.; Gregory [v. Mitchell]*, 634 F.2d [199] at 203 [(5th Cir. 1981)]. "Then, the concerns of finality in litigation become more compelling, and the litigant has had the benefit of a day in court, in some fashion, on the merits of his claim," *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 n.2 (5th Cir. 1981).'" *Id.* at 121.

In numerous other instances we have applied the same rationale. *See, e.g., Waltman v. International Paper Co.*, 875 F.2d 468, 473-74 (5th Cir. 1989) (no abuse of discretion in denying motion for reconsideration of order granting partial summary judgment where materials relied on for reconsideration "were available to" movant "when she opposed . . . [the] summary judgment motion . . . and she did not give any explanation why she did not include the materials with her motion in opposition to summary judgment"); *Savers Federal*

*Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1508-09 (5th Cir. 1989) (no abuse of discretion in denying Rule 59(e) motion, seeking to raise new theories why summary judgment not proper, where facts were known to movant in advance of summary judgment); *Southern Constructors Group v. Dynalectric Co.*, 2 F.3d 606, 612 & n.25 (5th Cir. 1993) (no abuse of discretion in denying Rule 59(e) motion that sought to amend to raise new theory, noting that denials of leave to amend are sustained "when the moving party engaged in undue delay or attempted to present theories of recovery seriatim," citing *Union Planters*). *See also Batterton* at 1225.

Here, when the district court rendered judgment, the case had been pending for nearly eighteen months; indeed, more than a year had elapsed both since the state's motion for summary judgment was filed (no response thereto ever having been made) and since Briddle had filed his amended petition in response to the district court's order to do so and to be sure to raise all claims therein on pain of waiving any not raised. Briddle was represented by counsel throughout. Yet it was not until over a year after the district court's judgment that the supplemental motion to alter or amend was filed. No reasons are advanced in the motion or in its supporting memorandum why any of the new claims raised therein could not have been raised when the amended petition was filed more than two years previously, nor are any such reasons advanced on appeal. It is obvious that there are no such reasons, because everything relied on in the supplemental motion to alter or amend is reflected in the state record (either the original record or the state habeas record). Indeed, the supplemental motion asserts (as does Briddle

36

on appeal) that "counsel's *review of the record* reveals additional issues that are not presently before the court" (emphasis added). Plainly, there was no abuse of discretion in denying the supplemental motion to alter or amend.

Briddle asserts that the district court's order denying the supplemental motion to alter or amend must be reversed because it states no reasons. There is no requirement that reasons be stated for the denial of a motion for reconsideration under Rule 59(e). *Cf. Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666-667 (5th Cir. 1981) (sustaining purely implicit denial of plaintiff's motion for leave to amend which "attempted to establish a new factual and legal theory" but was not filed until "more than a year after . . . institution of suit, after discovery had been terminated and after the defendant's motion for summary judgment"). Briddle relies on *Midland West Corp. v. Federal Deposit Ins. Corp.*, 911 F.2d 1141, 1145 (5th Cir. 1990), where we reversed the district court's denial of a *joint* motion of the parties to modify an agreed judgment "to reflect their intent accurately," stating "because the district court's order offers no reason or basis for denying the timely filed motion to reform for a conceded mutual mistake *and none is apparent to us*, we find error" (emphasis added). Plainly *Midland West* is not remotely on point. Here there is not only no joint motion nor conceded mistake, but validSQindeed compellingSQreasons for denying the motion are obvious and apparent on the face of the record.

We reject Briddle's fourth and final point of error.

37

## Conclusion

Having fully considered and rejected each of Briddle's points of error, the judgment of the district court is accordingly

AFFIRMED.[30]

---

[30] Any and all outstanding stay orders heretofore issued by this Court (or the district court) are hereby vacated.