**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-8529
_____

CLARENCE LACKEY,

Petitioner-Appellant,

VERSUS

WAYNE SCOTT, Director,
Director, Texas Department of Criminal Justice
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

(August 2, 1994)

Before JOLLY, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Clarence Lackey, a Texas death row inmate, appeals the district court's decision denying his petition for writ of habeas corpus. We affirm.

BACKGROUND

In 1983, a Texas jury found Clarence Lackey guilty of capital murder.[1] At the punishment phase of the trial, the jury answered affirmatively the special issues submitted under the former Tex. Code Crim. Proc. Ann. art. 37.071(b),[2] requiring the

---

[1]    See Lackey v. State, 819 S.W.2d 111 (Tex. Crim. App. 1989), for a detailed recitation of the facts.

[2]    At the time, the Texas capital sentencing statute required the court to sentence the defendant to death if the jury returned

trial court to impose a death sentence.  In 1989, the Texas Court of Criminal Appeals affirmed Lackey's conviction and sentence. See Lackey v. State, 819 S.W.2d 111 (Tex. Crim. App. 1989). Shortly thereafter, the Supreme Court decided Penry v. Lynaugh, 492 U.S. 302 (1989).  Lackey petitioned the Court of Criminal Appeals for rehearing in light of that opinion.  After considering Lackey's Penry claims, the court affirmed the judgment. See Lackey v. State, 819 S.W.2d 111, 128 (Tex. Crim. App. 1991).  Following this affirmance, Lackey sought a writ of habeas corpus in state court, which was denied.  Lackey then filed a federal habeas petition and request for a stay of execution.  The district court granted the stay, and after briefing and an evidentiary hearing, denied relief.  This appeal followed.

DISCUSSION

I.   Penry Claims

---

affirmative findings on each of the following issues:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex. Code Crim. Proc. Ann. art. 37.071(b).  The first two issues were submitted to the jury at the punishment phase of Lackey's trial.

2

During the punishment phase of Lackey's trial, he requested an instruction regarding mitigating evidence, which was denied. On appeal, Lackey contends that the trial court's refusal to give the requested instruction unconstitutionally restricted his opportunity to present mitigating evidence. Specifically, Lackey argues that, without the requested instruction, the Texas special issues did not allow the jury to give mitigating effect to the following evidence: (1) his intoxication at the time of the offense; (2) his history of excessive drinking; (3) his low intelligence; and (4) his childhood abuse. In support of his arguments, he relies on the Supreme Court's decision in Penry, 492 U.S. at 302 (1989), and the cases that have clarified its holding.

In Penry, the Supreme Court held that, absent additional instructions to the jury, the Texas special issues did not permit the jury to give effect to the mitigating evidence of Penry's mental retardation and history of childhood abuse. According to the Court, in the absence of an instruction defining the term "deliberately" in the first special issue, the jury may have been precluded from giving effect to their possible opinion that Penry's mental retardation and history of childhood abuse made him "less able than a normal adult to control his impulses or to evaluate the consequences of his conduct" and thus less personally culpable. Id. at 323. With respect to the second issue, the Court found that the mitigating evidence was a double-edged sword: it mitigated his culpability and at the same time it

3

indicated that he would be dangerous in the future.  Id. at 324.
Finally, the evidence was not relevant to the third issue.  The
Court concluded that the state court erred by not instructing the
jury that it could consider and give affect to the mitigating
evidence of Penry's mental retardation and childhood abuse by
declining to impose the death sentence.

Subsequent to Penry, the Supreme Court explained that a
state's refusal to give additional instructions does not amount
to constitutional error unless there is a "'reasonable likelihood
that the jury applied the challenged instruction in a way that
prevents the consideration of constitutionally relevant
mitigating evidence.'"  Johnson v. Texas, 113 S. Ct. 2658, 2669
(1993) (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).
Applying this standard, we hold that Lackey's mitigating evidence
did not require additional instruction.

At the punishment phase of the trial,[3] Lackey called Dr.
Herbert Modlin, a psychiatrist and expert witness, to testify.
Dr. Modlin described Lackey as a "periodic drinker"))a person who
does not need daily drinks, but when he does drink, he often
drinks too much causing him to blackout.  Dr. Modlin attributed
Lackey's crime to an alcohol-induced blackout that caused Lackey
to lose contact with reality and rendered him capable of engaging
in automatic behavior.  Lackey adduced additional evidence that

---

[3]  Lackey bases his Penry claim on evidence proffered at a
hearing on federal habeas, as well as evidence proffered at his
trial.  Our review, however, is limited to evidence presented at
trial.  See, e.g., Anderson v. Collins, 18 F.3d 1208, 1214-15
(5th Cir. 1994).

4

his drinking problem was treatable, that he was a good candidate for treatment, and that diagnostic and treatment facilities were available to him in prison. Dr. Modlin concluded that, in his expert opinion, Lackey was not likely to pose a future threat to society.

We have previously stated that the Texas sentencing scheme does not preclude the jury from giving mitigating effect to evidence of a defendant's voluntary intoxication at the time of the offense. See, e.g., James v. Collins, 987 F.2d 1116, 1121 (5th Cir.), cert. denied, 114 S. Ct. 30 (1993); Cordova v. Collins, 953 F.2d 167, 170 (5th Cir.), cert. denied, 112 S. Ct. 959 (1992). Unlike Penry's mental retardation and childhood abuse, "voluntary intoxication is not the kind of 'uniquely severe permanent handicap[] with which the defendant was burdened through no fault of his own' that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision." Cordova, 953 F.2d at 170 (quoting Graham v. Collins, 950 F.2d 1009, 1029 (5th Cir. 1992), aff'd, 113 S. Ct. 892 (1993)). "[E]vidence of voluntary intoxication can be given full effect by the jury in deciding whether the defendant acted deliberately." Id. Furthermore, the sentencing jury could have reasonably taken into consideration Dr. Modlin's testimony that Lackey would not be a future threat to society in answering the second issue.[4]

---

[4] Lackey attempts to characterize his propensity to overindulge as a permanent handicap by claiming that he is an alcoholic. The evidence does not, however, support is claim. Lackey presented

5

Likewise, no special instruction was necessary to effectuate evidence presented on Lackey's history of childhood abuse or low intelligence. At the sentencing hearing, Lackey's mother told the jury that during his childhood she and Lackey were physically abused by his father. With regard to his low intelligence, both Lackey's mother and Dr. Modlin testified that Lackey did poorly in school. Additionally, Dr. Modlin testified that Lackey's IQ was below normal.[5] This evidence was not relevant to the first special issue because there was no suggestion that Lackey's criminal act was attributable to his low intelligence or childhood abuse. See Madden v. Collins, 18 F.3d 304, 307 (5th Cir. 1994) (stating that to be relevant there must be a nexus between the mitigating evidence and the criminal act). To the contrary, Dr. Modlin testified that Lackey's background and psychological profile could not explain his crime. Furthermore, Lackey's trial counsel argued to the jury that the evidence of Lackey's low intelligence and history of childhood abuse were not offered to excuse Lackey's crime, but rather to show that he would not be a future danger to society. We conclude that the jury could have reasonably considered this evidence in answering

---

no expert diagnosis that he suffered from alcoholism. To the contrary, Dr. Modlin described Lackey as a "periodic drinker."

[5] Lackey attempts to characterize his poor academic record and low IQ as mental retardation. This characterization is unfounded. Although at age fourteen Lackey tested in the mildly retarded range, Dr. Modlin explained that IQ tests are not reliable until age sixteen. Tests given to Lackey after the age of sixteen indicated below average intelligence, but not retardation.

6

the second issue.

Because Lackey's mitigating evidence, as proffered, was within the jury's effective reach, acceptance of Lackey's claim would require this Court to announce a new rule of constitutional law. Consequently, federal habeas relief is foreclosed. See Teague v. Lane, 489, U.S. 288, 311 (1989).

## II. Intoxication/Insanity Instruction

Lackey contends that the following instruction, given pursuant to section 8.04 of the Texas Rules of Criminal Procedure, prevented the jury from giving mitigating effect to his evidence of voluntary intoxication at the time of the offense:

> You are instructed that under our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of crime. Evidence of temporary insanity caused by intoxication may be considered in mitigation of the penalty attached to the offense.
> By the term "intoxication" as used in this Charge is meant that at the time of the conduct charged, the defendant, as a result of voluntary intoxication, either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law which he has found to have violated.
> Now, if you find from the evidence that the defendant, Clarence Allen Lackey, at the time of the commission of the offense for which he is on trial was laboring under temporary insanity as above defined, produced by voluntary intoxication as defined, that you may take such temporary insanity into consideration in mitigation of the penalty which you attach to the offense for which you have found him guilty.

Lackey argues that the instruction precluded the jury from considering mitigating evidence of voluntary intoxication that did not rise to the level of temporary insanity. In effect, Lackey is arguing that the jury was precluded from considering

7

evidence that he did not ask them to consider.  He did not present evidence or argue at trial that his voluntary intoxication amounted to anything less than temporary insanity.  Rather, he presented evidence that his criminal conduct was attributable to an "alcoholic blackout," which caused him to lose contact with reality and rendered him capable of engaging in automatic behavior.  Because Lackey failed to proffer evidence of non-insane intoxication in mitigation of punishment, whether the jury could properly consider it is not a proper subject for habeas review.  See Delo v. Lashley, 113 S. Ct. 1222, 1225 (1993) ("Nothing in the Constitution obligates state courts to give mitigating circumstantial instructions when no evidence is offered to support them.")

### III.  Interference of the Texas Capital Sentencing Scheme With Counsel's Presentation of Evidence

Appellant argues that the Texas capital sentencing statute unconstitutionally interfered with his trial counsel's ability to make decisions about his defense.  Specifically, Lackey argues that because mental health evidence could be considered in aggravation of the second special issue, the statutory scheme prevented his trial counsel from developing and presenting mitigating evidence about his mental condition.  We have considered and rejected this precise argument in previous cases. See Black v. Collins, 962 F.2d 394, 407 (5th Cir.), cert. denied, 112 S.Ct. 2983, (1992); May v. Collins, 948 F.2d 162, 166-68 (5th Cir. 1991), cert. denied, 112 S. Ct. 907 (1991).

### IV.  Ineffective Assistance of Counsel

8

Lackey suggests that his trial counsel rendered ineffective assistance by failing to produce a mental health expert to develop a nexus between Appellant's childhood abuse and his violence as an adult. He also suggests that his appellate counsel was ineffective for failing to pursue a challenge to the state law prohibition against informing jurors of the legal effect of a failure to agree on answers to the special issues. Because Lackey did not raise these claims before the state court on habeas review or the federal district court,[6] we cannot consider his claims here. Alexander v. McCotter, 775 F.2d 595, 603 (5th Cir. 1985); see also Barnard v. Collins, 958 F.2d 634, 643 n.12 (5th Cir. 1992), cert. denied, 113 S. Ct. 990 (1993).

V.   Denial of Funds for expert assistance

Lackey contends that the trial court unconstitutionally denied him funds for the assistance of non-psychiatric experts. The district court correctly found that Appellant had procedurally defaulted the claim in state court. Lackey did not request such assistance on the record or obtain a ruling, and the state habeas court held this claim was procedurally barred. When a state-law default prevents the state court from reaching the merits of a federal claim, that claim cannot be reviewed absent a showing of

---

[6]     On state habeas and on federal habeas before the district court, Lackey claimed that his trial counsel was ineffective for four reasons: (1) failure to request a competency trial; (2) failure to object to the exclusion for cause of certain prospective jurors; (3) failure to properly cross-examine trial witnesses; and (4) failure to request an instruction on parole during the punishment phase. None of these arguments encompasses Lackey's arguments before this Court.

9

cause and prejudice. <u>Ylst v. Nunnemaker</u>, 501 U.S 797 (1991); <u>Cowart v. Hargett</u>, 16 F.3d 642, 644-45 (5th Cir. 1994). Because Lackey has not even attempted to argue cause and prejudice, we are precluded from considering his claim.

## VI. Punishment-phase Instructions Regarding Jury Agreement

Appellant claims his constitutional rights were violated by a statutory prohibition against informing jurors of the effect of their failure to agree on a punishment phase issue.[7] The district court properly held that this claim was procedurally barred. As noted by the district court, the state habeas court rejected Lackey's claim on the ground that he did not object to the jury charge or request a special instruction. Furthermore, Appellant has not argued circumstances permitting our review of his defaulted claim.

## VII. Failure to Define Reasonable Doubt

Lackey contends that the state court violated his constitutional rights by refusing to apply retroactively the principles of <u>Geesa v. State</u>, 820 S.W.2d 154 (Tex. Crim. App. 1991). In <u>Geesa</u>, which was decided after Lackey's trial but before Lackey's conviction became final, the Texas Court of Criminal Appeals announced a new rule requiring a definition of the term "reasonable doubt" in jury instructions in criminal trials. The state court also announced that the new rule would only apply to criminal cases where the trial occurred after <u>Geesa</u>. Appellant argues that <u>Geesa</u> is based on federal law, and therefore, <u>Griffith</u>

---

[7] Tex. Code Crim. Proc. Ann. art. 37.071.

10

v. Kentucky, 479 U.S. 314 (1987), requires that it be given retroactive treatment.

Contrary to Lackey's assertions, the rule announced in Geesa was not required by the federal constitution or law. See Victor v. Nebraska, 114 S.Ct. 1239 (1994) (stating that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so"); see also Thompson v. Lynaugh, 821 F.2d 1054, 1060-61 (5th Cir.), cert. denied, 483 U.S. 1035 (1987) (noting that "attempts by trial courts to define 'reasonable doubt' have been disfavored by this Court"). Thus, the federal retroactive principles discussed in Griffith have no bearing on the state's application of its new rule. See American Trucking Ass'ns Inc. v. Smith, 497 U.S. 167, 177 (1990).

Alternatively, Appellant argues that the state court's refusal to give retroactive application to Geesa violated his right to equal protection. Because Lackey has not made any attempt to show this Court that the state did not have a rational basis for its refusal to apply the rule of Geesa retroactively, we reject Lackey's claim. See Johnson v. Louisiana, 406 U.S. 356, 363-65 (1972).

## VIII.  Cumulative Effect of Errors

Lackey contends that the cumulative effect of the foregoing alleged errors constituted an independent constitutional violation. Because Lackey has not shown any error, much less constitutional error, we must reject his contention.

## IV.  Execution After Long Imprisonment

11

Finally, Appellant notes that he has been on death row since 1983 and argues that executing him after his lengthy incarceration "makes no measurable contribution to accepted goals of punishment." He also argues that the addition of the death penalty to his lengthy incarceration is "grossly out of proportion to his isolated act." We will not address the merits of these arguments for two reasons. First, Appellant raises these arguments for the first time on appeal. See Alexander, 775 F.2d 603. Second, granting Lackey the relief he seeks would require us to create a new rule. See Teague, 489 U.S. 311.

## CONCLUSION

For the foregoing reasons, the district court's denial of Lackey's petition for writ of habeas corpus is AFFIRMED, and the stay of execution issued by the district court is VACATED.