**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-20101

_____


KARLA FAYE TUCKER,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON, Director,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

July 2, 1997

ON PETITION FOR REHEARING

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Since the panel opinion was issued in this case, *see Tucker v. Johnson*, No. 97-20101, 1997 WL 295707 (5th Cir. June 3, 1997), the Supreme Court has held §§ 101-106 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1217-21 (1996) (codified at 28 U.S.C. §§ 2244, 2253-2254), inapplicable to habeas corpus petitions filed before the act's effective date of April 24, 1996.  *See Lindh v. Murphy*,

No. 96-6298, 65 U.S.L.W. 4557 (U.S. June 23, 1997).[1]  As petitioner's habeas petition pre-dated the act, she is not subject to it.

The standard for granting a certificate of appealability ("COA") under the AEDPA, *see* 28 U.S.C. § 2253(c)(2), is the same as the standard for granting a certificate of probable cause, *see* 28 U.S.C.A. § 2253 (West 1994), under our pre-AEDPA jurisprudence. *See Drinkard v. Johnson*, 97 F.3d 751, 756 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 1114 (1997).  Nonetheless, we did consider the deferential standards of the AEDPA in making our determination whether to grant a COA.  *See Tucker*, 1997 WL 295707, at *3.

Although we ultimately conclude that Tucker is not entitled to an appeal under the pre-AEDPA standards of review, *Lindh* substantially changes our reasoning.  Accordingly, treating Tucker's suggestion for rehearing en banc as a petition for panel rehearing, we grant rehearing, withdraw our prior opinion, and substitute the following:

Karla Tucker, proceeding *in forma pauperis*, appeals the denial of her petition for writ of habeas corpus.  Concluding that she has failed to make a substantial showing of the denial of a federal

---

[1] The AEDPA would apply to capital habeas cases pending in a state that had qualified for the expedited procedures set forth in § 107 of the AEDPA, 110 Stat. at 1221-26 (codified at 28 U.S.C. §§ 2261-2266).  *See Lindh*, 65 U.S.L.W. at 4559. Texas, however, has not yet satisfied § 107's requirements, so the AEDPA does not govern the instant capital habeas case.  *See Green v. Johnson*, No. 96-50669, 1997 WL 359070, at *2-*3 (5th Cir. June 27, 1997).

right, we deny her a certificate of probable cause ("CPC").

I.

A.

On June 12, 1983, Tucker spent most of the day using drugs and alcohol with her boyfriend, Danny Garrett ("Danny"); her sister, Kari Burrell ("Kari"); Kari's ex-husband, Ronnie Burrell ("Ronnie"); and James Leibrant. Kari and Ronnie left in the evening. In the early morning hours of June 13, Tucker, Danny, and Leibrant decided to go to Jerry Dean's home and steal his motorcycle.

They entered Dean's apartment using a key that Tucker had stolen. In the bedroom, they found Dean and Deborah Thornton. When Dean begged for his life, Tucker began to "pick" him with an axe. She later told Kari that she received sexual gratification with every swing of the axe. At one point, Leibrant entered the bedroom to find Tucker attempting to pull the axe out of Dean by using her foot on him as leverage. After she pulled the axe from his body, she lifted it above her head, smiled at Leibrant, and swung it into Dean again.

Tucker and Danny then used the axe on Thornton until, when Thornton begged for the end, Danny embedded the axe in her throat. Danny and Tucker took Dean's truck, wallet, and motorcycle. They stored the stolen property with Danny's brother, Doug Garrett ("Doug").

Tucker boasted about her actions to Kari and Doug and

3

expressed pleasure while watching a television news report about the killings.  Kari and Doug went to the police and reported Tucker's statements.  Doug was fitted with a hidden microphone and recorded a ninety-minute discussion with Tucker and Danny about the murders.

B.

A jury convicted Tucker of capital murder.  *See* TEX. PEN. CODE ANN. § 19.03(a)(2) (Vernon 1994).  At the sentencing phase, the jury was instructed to consider the two statutorily-mandated special issues, as required by then-existing law:

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; . . . .

TEX. CODE CRIM. PROC. ANN. art. 37.071(b) (Vernon 1981).  The jury answered each special issue in the affirmative, and the court sentenced Tucker to death.

The conviction and sentence were affirmed on direct appeal, *see Tucker v. Texas*, 771 S.W.2d 523 (Tex. Crim. App. 1988) (en banc), whereupon Tucker sought state habeas relief, raising the issues she raises in her federal habeas petition.  After a remand to the trial court for an evidentiary hearing, the Texas Court of Criminal Appeals denied habeas relief.

Tucker then filed a federal habeas petition, alleging ineffective assistance of counsel and constitutional errors in the

4

jury instructions and challenging the state's use of Leibrant's testimony at trial.[2]  The district court granted summary judgment for the state, dismissed the petition, and denied a CPC.

## II.

In order to appeal, a habeas petitioner must receive a CPC. *See* 28 U.S.C.A. § 2253 (West 1994).[3]  We may not grant a CPC unless the applicant has made a "'substantial showing of the denial of [a] federal right.'"  *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (quoting *Stewart v. Beto*, 454 F.2d 268, 270 n.2 (5th Cir. 1971)). The petitioner must show "that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further."  *Sawyers v. Collins*, 986 F.2d 1493, 1497 (5th Cir. 1993) (quoting *Barefoot*, 463 U.S. at 893 n.4) (internal quotation marks omitted).

---

[2] Tucker did not raise the arguments about Leibrant's testimony in her application for a CPC before the district court or before us, so we consider them waived.  *See Lockhart v. Johnson*, 104 F.3d 54, 56 (5th Cir. 1997), *cert. denied*, 1997 WL 194865 (U.S. June 27, 1997) (No. 96-8577).

[3] Section 102 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1217-18 (1996) (codified at 28 U.S.C. § 2253), amended 28 U.S.C. § 2253 to require a certificate of appealability ("COA") before a final order in a habeas proceeding can be appealed.  In light of *Lindh v. Murphy*, No. 96-6298, 65 U.S.L.W. 4557, 4558 (U.S. June 23, 1997), however, this requirement does not apply to habeas petitions filed prior to April 24, 1996, the effective date of the AEDPA.  *See Green v. Johnson*, No. 96-50669, 1997 WL 359070, at *3 (5th Cir. June 27, 1997).  Tucker filed her habeas petition prior to April 24, 1996.

Tucker's first two issues on appeal are intertwined.  First, she argues that trial counsel rendered ineffective assistance of counsel by proposing the voluntary intoxication instruction contained in TEX. PEN. CODE ANN. § 8.04(b) (Vernon 1994).  Specifically, counsel requested, and the court gave, the following instruction:

> Evidence of temporary insanity of the defendant caused by intoxication may be introduced by the defendant in mitigation of the penalty attached to the offense for which she is being tried.
>
> . . . .
>
> Temporary insanity caused by intoxication means that the defendant's mental capacity was so disturbed from the introduction of a substance into her body that the defendant did not know that her conduct was wrong or was incapable of conforming her conduct to the requirements of the law she allegedly violated.

*Tucker*, 771 S.W.2d at 533.  She asserts that this instruction prevented the jury from considering the mitigating evidence of intoxication unless that intoxication rose to the level of temporary insanity.  *But see Drinkard v. Johnson*, 97 F.3d 751, 756-64 (5th Cir. 1996) (rejecting this argument), *cert. denied*, 117 S. Ct. 1114 (1997).

Tucker's second argument is that her counsel was ineffective during juror voir dire.  Both the prosecution and the defense questioned each juror at length about whether he would be willing to weigh temporary insanity caused by voluntary intoxication as a mitigating factor.  Tucker argues that counsel should not have

6

presented this version of the law to the jurors and should have objected to the prosecution's comments.

## B.

To establish ineffective assistance, Tucker must demonstrate both deficient performance by her counsel and prejudice resulting from that deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We compare counsel's performance to an objective standard of reasonableness, mindful of the strong presumption of adequacy. We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices. *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing).

Applying the prejudice prong in the context of counsel's performance at sentencing, we ask whether the petitioner has demonstrated "a 'reasonable probability' that the jury would not have imposed the death sentence in the absence of errors by counsel." *Carter v. Johnson*, 110 F.3d 1098, 1110 (5th Cir. 1997).[4] Failure to establish either prong defeats the claim. *See Washington*, 466 U.S. at 697.

## C.

As the state habeas court found, trial counsel's strategy was

---

[4] Although *Carter* was influenced by our erroneous view of the applicability of the AEDPA to cases pending when the act became effective, it presumably remains precedent in this circuit to the extent that it "do[es] not conflict with *Lindh*'s conclusion that the chapter 153 amendments do not apply retroactively." *Green*, 1997 WL 359070, at *3 n.2.

to "highlight evidence of [Tucker]'s temporary insanity resulting from voluntary intoxication at the time of the offense, rather than evidence of her mere voluntary intoxication which did not result in temporary insanity." Considering the horrific details of the murders and Tucker's own statement that she received sexual gratification from plunging the axe into her victims, trial counsel reasonably could have believed that evidence of mere voluntary intoxication would not persuade the jury to spare Tucker's life.

Counsel's strategy of arguing that Tucker was temporarily insane at the time of the murders was reasonable, though unsuccessful, and easily satisfies the standard for effective assistance. No reasonable jurist would disagree, and Tucker has not made a substantial showing of the denial of a federal right.

IV.

A.

Tucker's third contention is that the § 8.04 voluntary intoxication instruction violated the Eighth and Fourteenth Amendments because it impermissibly prevented the jury from considering the mitigating effect of non-insane voluntary intoxication. Our analysis of this claim is complicated by the doctrine of procedural default.

A federal habeas court may not consider a state prisoner's claim if the state based its rejection of that claim on an independent and adequate state ground. *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). The procedural bar will not be

8

considered "adequate" unless it is applied "strictly or regularly" to the "*vast majority of similar claims*." *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir.), *cert. denied*, 116 S. Ct. 557 (1995).

Tucker challenged the constitutionality of the § 8.04(b) instruction on direct appeal. *See Tucker*, 771 S.W.2d at 533-34. The Texas Court of Criminal Appeals denied relief because Tucker had requested the instruction, and thus the doctrine of invited error barred her claim. *See Capistran v. Texas*, 759 S.W.2d 121, 124-25 (Tex. Crim. App. [Panel Op.] 1982) (on rehearing) (explaining the invited error doctrine). The district court refused to address the merits of this claim, reasoning that it was barred by procedural default.

Our determination whether Tucker is entitled to a CPC is complicated by the district court's reliance on the procedural bar. In such cases, we refuse to grant a CPC when the petitioner fails to make a showing that he can overcome the bar. *See Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994). Even when the petitioner can make such a showing, we still refuse to grant a CPC when the underlying claim is not "debatable among jurists of reason." *Sawyers*, 986 F.2d at 1502.

### B.

A habeas petitioner can overcome a procedural default by showing cause and prejudice for that default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Tucker argues that counsel's ineffective assistance constitutes cause excusing the procedural

default.  As we have found that Tucker has not made a substantial showing that counsel was ineffective in requesting the instruction, we must reject this argument.  Therefore, because Tucker has not shown that she can overcome the procedural default, we deny her a CPC on this issue.

V.

Tucker's fourth, sixth, and seventh arguments are based on *Penry v. Lynaugh*, 492 U.S. 302 (1989).  She argues that the Texas sentencing scheme, as applied through the jury instructions, was unconstitutional because (1) the jury received no guidance on how to consider mitigating evidence; (2) the court failed to define "deliberately";[5] and (3) the jury was prevented from considering her mitigating evidence.

Instructional error of this sort does not amount to a constitutional violation "unless there is a reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence."  *Lackey v. Scott*, 28 F.3d 486, 489 (5th Cir. 1994) (internal quotation marks omitted) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)).  Furthermore, the mitigating evidence "must demonstrate a 'uniquely severe permanent handicap[] with

---

[5] The state habeas court rejected this argument on the ground that Tucker failed to request a definition of "deliberately" at trial, although she did request that the court distinguish "deliberately" from "intentionally."  The state did not plead this procedural default before the district court, so we consider it waived.  *See United States v. Marcello*, 876 F.2d 1147, 1153 (5th Cir. 1989).

which the defendant was burdened through no fault of his own.'" *Turner v. Johnson*, 106 F.3d 1178, 1189 (5th Cir. 1997) (quoting *Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd*, 506 U.S. 461 (1993)).

Tucker's mitigating evidence consisted of her (1) history of chronic drug and alcohol abuse from age eight; (2) intoxication at the time of the offence; (3) young age of twenty-three; and (4) arrested emotional development caused by chronic drug use. We have held that intoxication and youth are not valid *Penry* evidence. *See id.* (youth); *Lackey*, 28 F.3d at 489 (voluntary intoxication). Similarly, self-inflicted chronic drug and alcohol abuse and the resulting arrested emotional development do not constitute a unique handicap "with which the defendant was burdened through no fault of his own." Tucker has not made a substantial showing of the denial of a federal right with respect to these claims.

## VI.

Tucker's fifth contention is that her counsel was ineffective for failing to request a mitigation-of-punishment jury instruction. We have concluded already that Tucker was not entitled to a mitigation-of-punishment instruction and that counsel made a reasonable strategic choice to concentrate the jury's attention on the possibility that Tucker was temporarily insane at the time of the murders. No rational jurist would conclude otherwise.

The application for a CPC is DENIED.

11