# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-41395

_____

DAVID RAY HARRIS,

Petitioner-Appellee-
Cross-Appellant,

VERSUS

JANIE COCKRELL,
DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellant-
Cross-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

November 18, 2002

Before JOLLY, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The State of Texas appeals the grant of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, David Harris, cross-appeals the rejection of his claims that the jury in his capital trial was unconstitutionally precluded from giving mitigating effect to evidence of his alcoholism and that the admission of evidence of an extraneous offense of which he had been acquitted denied him a fair trial. We affirm in part, reverse in part, and render judgment in favor of the state.

## I.

In 1985, Harris entered the apartment of Mark Mays while Mays and his girlfriend, Roxanne Lockard, were sleeping. Armed with a revolver, Harris went into the bedroom and awakened them. After instructing Mays to lock himself in the bathroom, Harris led Lockard out of the apartment at gunpoint and directed her to get into his truck.

Mays emerged from the apartment with a gun, and the two men exchanged fire. According to Harris, Mays shot first, hitting Harris in the neck, then in the shoulder, before Harris began shooting at Mays. After shooting Mays several times, once at close range, Harris left. He was found guilty of capital murder.

This appeal raises several claims related to the conduct of the sentencing phase of the trial. The state appeals the district court's grant of habeas relief that was based on two of Harris's claims: first, that the special instructions given to the jury failed to provide an adequate vehicle for the jury to give effect to Harris's evidence of provocation; and second, that the failure of counsel to present certain items of potentially mitigating evidence constituted ineffective assistance. Harris cross-appeals the rejection of his additional claims that the special issues were unconstitutionally flawed in that they precluded the jury from giving effect to evidence of Harris's alcoholism; that the prosecutor's allegedly improper closing argument during the guilt-innocence phase denied Harris a fair trial; and that Harris was denied a fair sentencing determination by the admission of evidence of an extraneous offense of which he had been acquitted.

The district court erred in deciding that the jury instructions at the punishment phase provided an insufficient vehicle for the jury to give

effect to Harris's mitigating evidence related to provocation and that Harris was prejudiced by ineffective assistance of counsel. We affirm the rejection of the remaining claims.

## II.

At the sentencing phase, the jury answered affirmatively the three special issues related to deliberateness, future dangerousness, and inadequate provocation. Consequently, Harris was sentenced to death. Citing *Penry v. Lynaugh* ("*Penry I*"), 492 U.S. 302 (1989), and *Penry v. Johnson* ("*Penry II*"), 532 U.S. 782 (2001), Harris contended that the Texas special issues framework was unconstitutional as applied to his case, because it precluded the jury from giving effect to potentially mitigating evidence related to provocation by the victim and Harris's alcohol abuse. The district court granted relief on the claim based on the evidence of provocation and rejected the claim as to evidence of alcohol abuse. We conclude that the special issues permitted the consideration of both types of mitigating evidence.

### A.

In *Penry I*, 492 U.S. at 328, the Court held that the Texas special issues were constitutionally deficient as applied to the defendant, because they failed to provide the sentencing jury with an adequate means of giving effect to mitigating evidence of severe mental retardation and abuse. Harris claims that these special issues likewise precluded the jury from giving mitigating effect to his evidence of alcohol abuse, in violation of *Penry I*.

To form the basis of a *Penry* claim, mitigating evidence "must demonstrate a 'uniquely severe permanent handicap[] with which the defendant was burdened through no fault of

2

his own.'"[1]   Under this definition, neither evidence of alcoholism nor evidence of intoxication at the time of the offense constitutes *Penry* evidence.[2]

The jury was able to give mitigating effect to the evidence of Harris's alcoholism through its answers to the first and second special issues.  Evidence of intoxication can be fully considered under the first special issue,[3] which asked the jury to evaluate the deliberateness of Harris's conduct.[4]  Furthermore, to the extent that "alcoholism has independent mitigating weight apart from intoxication at the time of a crime," *James*, 987 F.2d at 1121 n.6, the second special issue, which relates to future dangerousness,[5] provided a means for giving mitigating effect to Harris's evidence that he is an alcoholic.  *See id.* at 1121.

Trial counsel presented testimony at the sentencing phase that Harris's history of violent conduct stemmed from his alcoholism, which could be brought under control.  The jury reasonably could have considered this testimony when evaluating whether Harris was a continuing danger to society.  *See id.*  Therefore, the district court was correct in rejecting Harris's *Penry* claims based on his mitigating evidence related to alcoholism and intoxication.

B.

Citing *Penry II*, the district court held that the third special issue[6] did not provide the jury with an effective means for consideration of evidence that Mays fired his weapon first.  In *Penry II*, 532 U.S. at 789, jurors were given the same three special issues submitted in this case.  They also were given a supplemental "nullification instruction," directing jurors to answer any special issue in the negative, irrespective of the evidence on that special issue, if they believed the mitigating circumstances rendered a life sentence more appropriate than death.  *Id.* at 789-90.  In essence,

---

[1] *Turner v. Johnson*, 106 F.3d 1178, 1189 (5th Cir. 1997) (quoting *Graham v. Collins*, 950 F.2d 1009, 1029 (5th Cir. 1992) (en banc), *aff'd*, 506 U.S. 461 (1993)).

[2] *See Lackey v. Scott*, 28 F.3d 486, 489 (5th Cir. 1994) ("Unlike Penry's mental retardation and childhood abuse, 'voluntary intoxication is not the kind of uniquely severe permanent handicap[ ] with which the defendant was burdened through no fault of his own that requires a special instruction to ensure that the mitigating effect of such evidence finds expression in the jury's sentencing decision.'" (quoting *Cordova v. Collins*, 953 F.2d 167, 170 (5th Cir. 1992) (internal quotes omitted)); *Tucker v. Johnson*, 115 F.3d 276, 282 (5th Cir. 1997) ("[S]elf-inflicted chronic drug and alcohol abuse and the resulting arrested emotional development do not constitute a unique handicap 'with which the defendant was burdened through no fault of his own.'").

[3] The first special issue reads as follows: "Was the conduct of the defendant that caused the death of the deceased committed deliberately and with the reasonable expection [*sic*] that the death of the deceased or another would result?"

[4] *Tucker*, 115 F.3d at 282; *Lackey*, 28 F.3d at 489; *James v. Collins*, 987 F.2d 1116, 1121 (5th Cir. 1993); *Cordova v. Collins*, 953 F.2d at 170.

[5] The second special issue reads:  "Is there a probability that the defendant will commit criminal acts of violence that will constitute a continuing threat to society?"

[6] The third special issue poses the question: "Was the conduct of the defendant in killing the deceased unreasonable in response to the provocation, if any by the deceased?"

3

the jury could give effect to the nullification instruction only by answering one of the special issues untruthfully. *Id.* at 799. The Court held that this nullification instruction failed to provide an adequate vehicle for the jury to make a reasoned moral response to Penry's mitigating evidence, because it "it made the jury charge as a whole internally contradictory, and placed law-abiding jurors in an impossible situation." *Id*.

The district court noted that by rejecting Harris's defense of voluntary manslaughter, the jury found that the killing was not done "under the immediate influence of passion based upon adequate cause." At the sentencing phase, the court continued, a juror who believed that Harris should receive a life sentence instead of the death penalty, because the victim shot first, could act on that belief only by answering in the negative the third special issue, which addresses whether the defendant's conduct in killing the victim was reasonable in light of any provocation.

The court reasoned that such a response would be inconsistent with the jury's rejection of Harris's manslaughter defense and that a juror could not logically answer the third special issue in the negative. As a result, the court concluded, the jury could not give mitigating effect to the evidence of provocation.

*Penry II* is inapplicable here, because the jurors were not directed to give untruthful responses or to violate their oaths to give effect to the mitigating evidence. There are no internal contradictions of the sort created by the nullification instruction considered in *Penry II*. Further, even if *Penry II* were applicable, the district court erred in holding that a negative answer to the third special issue is inconsistent with the jury's rejection of the voluntary man-

slaughter defense at the guilt-innocence phase.

The state trial court's construction of the third special issue defines the provocation inquiry more broadly than is the case with the guilt-innocence inquiries of self-defense and manslaughter.[7] In other words, a reasonable jury could find that the evidence of provocation was insufficient to justify a verdict of voluntary manslaughter but sufficient to justify a negative answer to the third special issue. Indeed, Harris's trial counsel specifically told the jurors, during argument at the punishment phase, that their guilty verdict did not foreordain an affirmative answer to the third-special issue. Therefore, the district court erred in granting relief to Harris on this issue.

### III.

The district court held that counsel's failure to present certain items of potentially mitigating evidence at the punishment phase constituted ineffective assistance of counsel. In particular, the court cited the failure of trial counsel to introduce evidence concerning Harris's troubled childhood and family background, drug and alcohol problems, and prior prison record.

We need not decide this question, for, even assuming *arguendo* the correctness of the court's substituted findings and its conclusion that counsel's conduct constituted deficient performance, the court erred in holding that this performance prejudiced the defense under *Washington*, 466 U.S. at 694, which requires the claimant to demonstrate that "there is a reasonable probability that, but for counsel's

---

[7] *See Evans v. State*, 601 S.W.2d 943, 946 (Tex. Crim. App. 1980); *Brown v. State*, 554 S.W.2d 677, 678-79 (Tex. Crim. App. 1977).

4

unprofessional errors, the result of the proceeding would have been different." In the context of a claim that counsel rendered ineffective assistance by failing to present evidence at the punishment phase of a capital murder trial, the inquiry is whether there is a reasonable probability that, had the evidence been presented, it would have altered the punishment verdict.[8]

The district court based its finding of prejudice on its comparison of the circumstances of Harris's case to those in two similar cases, *Duhamel v. Collins*, 955 F.2d 962 (5th Cir. 1992), and *Williams v. Taylor*, 529 U.S. 362 (2000). Harris's mitigating evidence is similar to that which this court characterized as "weak" in *Duhamel*, 955 F.2d at 966. The proposed evidence of Harris's mental retardation is his IQ score of 88 in the seventh grade. This is not strongly mitigating evidence such that its omission is likely to cause prejudice.[9]

Similarly, the evidence of an abusive childhood is less than compelling. Harris's evidence of abuse includes testimony that, although he was raised in a stable family environment, his father played favorites among his children and blamed Harris for the death of his brother. This evidence pales in comparison to that omitted by the trial attorneys in *Williams*, in which the Court held that the defendant had proved prejudice. The mitigating evidence available there demonstrated that the defendant's parents were imprisoned for criminal neglect of their children, that defendant had been repeatedly beaten by his father, that while his parents were imprisoned he spent time in an abusive foster home, and that he had been returned to the custody of his abusive parents upon their release from prison. *Williams*, 529 U.S. at 395-96.

The jury could have viewed much of the evidence omitted by Harris's trial counsel as either mitigating or aggravating. Testimony regarding Harris's family background would reveal that despite some emotional abuse, he came from a stable family environment. In addition, evidence relating to his "good" prison record would include a description of his violent behavior while incarcerated, and taken as a whole likely would be aggravating rather than mitigating. The failure to present such double-edged evidence is not prejudicial.[10]

Finally, there is overwhelming evidence of violence in Harris's background, which negates the likelihood that additional evidence would have resulted in a different outcome. *See Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1463 (2002). In light of the overall weakness of the proposed mitigating evidence, and the fact that its introduction would have resulted in the presentation of additional evidence of Harris's past violent conduct, there is no reasonable probability that the presentation of this additional evidence would have altered the outcome of the punishment verdict. Therefore, Harris failed to demonstrate prejudice, and the district court erred in granting relief on his claim of ineffective assistance.

---

[8] *See Washington*, 466 U.S. at 695; *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994).

[9] *See Duhamel*, 955 F.2d at 966 (holding that the omission of evidence that the defendant "was moderately mentally retarded with an IQ of 56" did not result in prejudice).

---

[10] *See, e.g., Ransom v. Johnson*, 126 F.3d 716, 723-24 (5th Cir. 1997); *Cockrum v. Johnson*, 119 F.3d 297, 301, 303-05 (5th Cir. 1997); *Faulder v. Johnson*, 81 F.3d 515, 519-20 (5th Cir. 1996).

## IV.

Harris contends that his right to a fair trial was compromised by the prosecutor's improper closing arguments at the guilt-innocence phase of the trial. Specifically, Harris complains that the prosecutor improperly asked the jury to convict him on the basis of the alleged expectations and knowledge of the community. The following exchange forms the basis of his claim:

> Mr. McWilliams [the prosecutor]: Ladies and gentlemen, there's one verdict that's proper in this case. You've known it since yesterday, the verdict that family and those police officers and the people of Jefferson County know is proper in this case SS
>
> Mr. Powell [defense]: Your Honor, we would object to counsel arguing that the jury should base their decision on the expectation of anybody, except on the evidence.
>
> The Court: Sustained.
>
> Mr. Powell: We would further request, Your Honor, that the Court instruct the jury to disregard Mr. McWilliams' statement.
>
> The Court: So instructed.
>
> Mr. McWilliams: It's the verdict that we know you will return, because it's justice in this case. It's not justice because I say it is. It's justice because you know it from the evidence you have here . . . . That verdict is guilt of Capital Murder.

Even if Harris is correct that the prosecutor's statements were improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.[11] Such unfairness exists "only if the prosecutor's remarks evince 'either persistent and pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.'"[12]

The prosecutor's remarks were neither repeated nor pronounced,[13] and in light of the

---

[11] *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (quoting *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir. 1983)); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985)*; see also Jackson v. Johnson*, 194 F.3d 641, 653 (5th Cir. 1999) ("[T]he appropriate inquiry is . . . whether the prosecution's comments so infected the trial with unfairness that there is a reasonable probability that the result would have been different if the proceeding had been conducted properly.").

[12] *Kirkpatrick*, 777 F.2d at 281 (quoting *Whittington*, 704 F.2d at 1421); *see also Menzies v. Procunier*, 743 F.2d 281, 288-89 (5th Cir. 1984) ("[A] prosecutor's improper argument will, in itself, exceed constitutional limitations in only the most 'egregious cases.'" (quoting *Houston v. Estelle*, 569 F.2d 372, 382 (5th Cir. 1978)).

[13] In an attempt to create the impression that the contested remarks were repeated, Harris quotes the prosecutor in misleading fashion. Specifically, Harris quotes the prosecutor's remarks after the initial objection was sustained as follows: "It's [the verdict desired by the family, police, and the people] the verdict we know you will return . . . ." The descriptive aside inserted into this quote is misleading, because it is not apparent that the prosecutor is using the pronoun "it" to incorporate
(continued...)

6

considerable evidence of guilt, there is no reasonable probability that, in their absence, the result would have been different. That is, "we cannot say that the prosecutor's remarks in this case were a crucial, critical, highly significant factor upon which the jury based its verdict of guilty." Accordingly, those statements did not render Harris's trial fundamentally unfair.

## V.

Harris contends that he was deprived of a fair sentencing determination by the introduction of evidence concerning a crime for which he had been indicted but acquitted. During the sentencing phase, the state introduced evidence that Harris had been charged with burglary, robbery, attempted robbery, and kidnaping. He eventually was acquitted of kidnaping and argues that the introduction of this evidence was contrary to the collateral estoppel aspect of double jeopardy and thus constituted a violation of his due process rights.

The introduction of evidence of extraneous offenses of which the defendant has been acquitted is consistent with due process. *Vega v. Johnson*, 149 F.3d 354 (5th Cir. 1998). Although due process requires the application of collateral estoppel, *Ashe v. Swenson*, 397 U.S. 436 (1970), that doctrine "does not preclude [the state] from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof," *Dowling v. United States*, 493 U.S. 342, 349 (1990).

Because "extraneous offenses offered at the punishment phase of a capital trial need not be proven beyond a reasonable doubt," *Vega*, 149 F.3d at 359, the relevant standard of proof necessarily was lower than that at Harris's criminal trial for kidnaping. Collateral estoppel therefore did not preclude the introduction of evidence pertaining to these charges, and Harris's due process rights were not violated. *See Vega*, 149 F.3d at 359.

In summary, we REVERSE the grant of habeas relief, AFFIRM the denial of all remaining claims, and RENDER judgment in favor of the state.

---

[13](...continued) the preceding objectionable statements appealing to community expectations.

In fact, the context omitted by Harris supports a very different construction of the remarks: "It's the verdict that we know you will return, because it's justice in this case. It's not justice because I say it is. It's justice because you know it from the evidence you have here . . . . That verdict is guilt of Capital Murder." When the statement is viewed in its entirety, the most reasonable reading is that "it" refers to a verdict of guilty, not the verdict expected by the community.

7